2008 ME 186

Claire BROWN

v.

CROWN EQUIPMENT CORPORATION.

Supreme Judicial Court of Maine.

Argued: March 12, 2008.
Decided: Dec. 11, 2008.

Robert H. Stier, Jr., Esq., Catherine R. Connors, Esq. (orally), Pierce Atwood, LLP, Portland, ME, for Crown Equipment Corporation.

Terrence D. Garmey, Esq., (orally), Nicole L. Lorenzatti, Esq., Smith, Elliott, Smith & Garmey, P.A., Portland, ME, for Claire Brown.

Daniel Rapaport, Esq., Jonathan Mermin, Esq., Preti Flaherty, LLP, Portland, ME, for Amici Curiae International Association of Defense Counsel and Chamber of Commerce of the United States of America.

Richard L. O'Meara, Esq., Murray, Plumb & Murray Portland, ME, for Amici Curiae Maine Trial Lawyers' Association, American Association for Justice, Maine Employers' Mutual Insurance Company, Prime Tanning, Inc., and Jeffrey and Mary Smith.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

SILVER, J.

[¶ 1] This case was certified from the United States Court of Appeals for the First Circuit pursuant to Rule 25 of the Maine Rules of Appellate Procedure, as authorized by 4 M.R.S. § 57 (2007), with two questions of state law for our review. Crown Equipment Corporation appealed from a judgment entered in the United States District Court for the District of Maine *(Cohen, Mag.)* after a jury found that it failed to warn an owner of a product manufactured by Crown of the dangers presented by that product, and awarded damages to Claire Brown. Crown contends that the court erred in instructing the jury that a failure to warn claim exists under Maine law. Claire Brown cross-appealed from the same judgment, contending that the court erred in adjusting her damages award for comparative negligence.

[¶ 2] Pursuant to M.R.App. P. 25, the First Circuit Court of Appeals certified the following questions of state law for our review:

1. Does Maine law incorporate the rule of Restatement (Third) of Torts: Products Liability § 10 that a manufacturer has a duty to warn known but indirect purchasers where its product was not defective at the time of sale but a product hazard developed thereafter?

2. Under Maine law, how is a jury's dollar adjustment for comparative negligence to be applied where a portion of the original damages award is reduced pursuant to the statutory damage cap?

■ [¶ 3] We answer as follows: Maine law recognizes, in limited circumstances, that there can be a post-sale duty to warn known indirect purchasers, but we have not and do not now adopt Restatement (Third) of Torts: Products Liability § 10 (1998). As to the first question, there was a post-sale duty to warn under the circumstances presented in this case. As to the second question, loss of consortium is a derivative claim, and we explain the calculation of damages.

I. BACKGROUND

[¶ 4] On August 1, 2003, Thomas Brown, an employee at Prime Tanning, was killed while operating a forklift in Prime's Sanford warehouse. Brown's widow Claire sued Crown, the forklift manufacturer, in Superior Court, for damages

arising from the accident. On the basis of citizenship diversity, Crown removed the case to the United States District Court. At trial, Claire Brown claimed that the forklift was defective when designed and that Crown had negligently failed to warn Prime of the risk once it became known to Crown. Over Crown's objection, the magistrate judge instructed the jury that such a failure to warn claim existed under Maine law.

[¶ 5] Crown manufactured the forklift in 1989 and sold it to a third party in 1990. Prime subsequently purchased the forklift from a used equipment dealer. In 1995, Crown learned that a new shelf design in many warehouses exposed operators of the company's forklifts to the risk of "horizontal entry," i.e., the risk that shelving could enter the forklift at an unshielded level and strike the operator. Between December 1989, when Crown manufactured Prime's forklift, and August 1999, Crown received notices of 134 horizontal intrusion accidents, including more than fifty that resulted in serious injury or death. Until 1999, Crown took no action to warn customers about the significant horizontal intrusion hazard, nor did it tell anyone that operators were actually experiencing accidents resulting in serious injury and death.

[¶ 6] In 1995, Crown developed a "backrest extension kit" for the forklift, reducing the risk of horizontal intrusions. In August 1999, Crown mailed Product Reference 1.15 to 13,000 of its customers, informing them of the horizontal intrusion risk and methods for mitigating the risk, which included using the kit. Crown sent this document by general delivery, with no indication on the envelope that it contained safety information, and accompanied it

with a "Dear Sir or Madam" cover letter signed by a sales executive. Neither the letter nor Product Reference 1.15 urged the use of protective measures or informed the reader that operators had been injured and killed in horizontal intrusion accidents.

[¶ 7] Prime did not receive the update because it did not purchase the forklift directly from Crown. A few months after the Product References were sent out in 1999, however, a Crown employee visited Prime to assess an OSHA-mandated modification that Prime had requested for the forklift subsequently involved in the accident. Crown did not provide Product Reference 1.15 to Prime at the time, nor did it inform Prime of the risk or of the kit's existence. Brown's death in 2003 was due to a horizontal intrusion suffered while swinging the rear of his forklift near a shelf. Brown was the eleventh operator of a Crown stand-up forklift to die as a result of such a horizontal intrusion.

[¶ 8] At trial, the jury found for Claire Brown on the failure to warn claim, but found for Crown on the defective product claim. The jury also found Thomas Brown comparatively negligent. The jury awarded Claire $4.2 million in damages, allocated as follows: $800,000 economic damages; $400,000 conscious pain and suffering damages; and $3,000,000 for loss of consortium. Over Claire's objection, the jury was not informed of Maine's statute capping the consortium damages element, see 18–A M.R.S. § 2–804 (2006), which at the time capped consortium damages at $400,000.[1] After the jury rendered its damages award, the magistrate judge reduced the award from $4.2 million to $1,523,809 pursuant to section 2–804, to account for the cap and for the jury as-

1. Title 18–A M.R.S. § 2–804 has since been amended. P.L. 2007, ch. 280, § 1 (effective Sept. 20, 2007) (codified at 18–A M.R.S. 2–804 (2007)). The amendment changed the consortium damages cap from $400,000 to $500,000. However, the 2007 amendment is irrelevant to this action because it occurred after Brown's death in 2003.

sessment of $200,000 for Thomas Brown's comparative negligence. The trial court reasoned the $200,000 comparative negligence assessment was 4.7619% of the original $4,200,000 award and used that percentage to reduce the award for economic damages, pain and suffering, and the capped consortium award.

[¶ 9] Crown appealed to the First Circuit Court of Appeals on the failure to warn claim. Claire Brown cross-appealed on the issue of damages, arguing that the trial court should have accounted for comparative negligence before applying the damage cap. She also argued that because 14 M.R.S. § 156 (2007) requires juries to calculate comparative negligence in "dollars and cents, and not by percentage," it was improper for the Court to convert the $200,000 in comparative negligence into a percentage of the original award.

[¶ 10] Pursuant to M.R.App. P. 25, the First Circuit Court of Appeals certified the following questions of state law for our review:

1. Does Maine law incorporate the rule of Restatement (Third) of Torts: Products Liability § 10 that a manufacturer has a duty to warn known but indirect purchasers where its product was not defective at the time of sale but a product hazard developed thereafter?

2. Under Maine law, how is a jury's dollar adjustment for comparative negligence to be applied where a portion of the original damages award is reduced pursuant to the statutory damage cap?

The First Circuit Court of Appeals also indicated its inclination to adopt the trial court's analysis on the calculation of the damages award unless otherwise directed by us.

## II. DISCUSSION

### A. Rule 25 Analysis

[¶ 11] M.R.App. P. 25 provides, in part:

**(a) When Certified.** When it shall appear to the Supreme Court of the United States, or to any of the Courts of Appeals or District Courts of the United States that there are involved in any proceeding before it one or more questions of law of this State which may be determinative of the cause and that there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may, upon its own motion or upon request of any interested party, certify such questions of law of this State to the Supreme Judicial Court sitting as the Law Court, for instructions concerning such questions of state law.

■■■■ [¶ 12] "Consideration of the merits of certified questions is not automatic." Alexander, *Maine Appellate Practice* § 25.1 at 176 (2008). We may consider a certified question if: (1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case. *Id.* (citing *Me. Green Party v. Sec'y of State*, 1997 ME 175, ¶ 2, 698 A.2d 516, 517; *League of Women Voters v. Sec'y of State*, 683 A.2d 769, 771 (Me.1996)). When there is clear controlling Maine precedent and/or material facts that are either in dispute or not before the Court, we may decline to answer the certified questions. *Id.* at 177 (citing *Jackson Brook Inst., Inc. v. Me. Ins. Guar. Ass'n*, 2004 ME 140, ¶ 1, 861 A.2d 652, 654).

[¶ 13] Because the United States District Court held a trial, and a jury rendered its verdict in this case, there are no issues of material fact in dispute. Further, there is no controlling precedent on

section 10 of the Restatement (Third) of Torts: Products Liability or the comparative negligence question. Finally, our answer, in at least one alternative, would be determinative of the case.

### B. Certified Questions
#### Question One

Does Maine law incorporate the rule of Restatement (Third) of Torts: Products Liability § 10 that a manufacturer has a duty to warn known but indirect purchasers where its product was not defective at the time of sale but a product hazard developed thereafter?

[¶ 14] Because the jury found in favor of Crown on the defective product issue, the only negligence claim available to Brown is a post-sale duty to warn.[2] In order for Brown to prevail, Crown must have had a post-sale duty to warn Brown or his employer, pursuant to Maine law. The facts of this case do establish such a duty and, because those facts present a straightforward negligence claim, we need not consider the more expansive product liability as described in section 10 of the Restatement (Third) of Torts: Products Liability.

[¶ 15] The elements to be proved in order to recover in negligence claims are: (1) a duty owed to the plaintiff by the defendant; (2) the defendant's breach of that duty; and (3) injury of the plaintiff by that breach. *Parker v. Harriman,* 516 A.2d 549, 550 (Me.1986). Duty is a question of law. *Searles v. Trs. of St. Joseph's Coll.,* 1997 ME 128, ¶ 5, 695 A.2d 1206, 1209.

[¶ 16] In *Maietta v. International Harvester Co.,* we affirmed the trial court's decision that there was sufficient evidence to justify instructing the jury that the

manufacturer had a duty to keep informed of developments in the field because the plaintiff had introduced evidence that the defendant knew of significant problems with the truck braking system at issue in the case, yet failed to inform the plaintiff about them. 496 A.2d 286, 297 (Me.1985). We have also previously imposed a duty to warn of "learned dangers" in the professional negligence context of an oral surgeon's duty to warn of hazards associated with dental implants, recognizing the importance of the patient's reliance on the expertise of her surgeon. *Farnum v. Oral Surgery Assocs.,* 2007 ME 140, ¶¶ 7–8, 933 A.2d 1267, 1270–71; *Brawn v. Oral Surgery Assocs.,* 2006 ME 32, ¶ 11, 893 A.2d 1011, 1015; *Welch v. McCarthy,* 677 A.2d 1066, 1069–70 (Me.1996).

[¶ 17] In the matter before us, Crown knew of the risk to forklift operators created by new shelving arrangements, had created a kit for reducing or eliminating that risk, was in personal contact with Prime, an indirect purchaser of the forklift, and performed an evaluation of that very forklift. On these facts, we have no difficulty concluding that Crown owed a duty to Brown as a known user of that forklift. Crown breached that duty by failing to warn Brown or his employer when it had an opportunity to do so, and the jury found that this failure to warn was a proximate cause of Brown's death. Because Crown had a duty at common law, we need not adopt section 10 of the Restatement (Third) of Torts: Products Liability.

[¶ 18] Accordingly, we answer the first certified question as follows: No, Maine law does not incorporate section 10. Maine law, however, recognizes a post-sale

---

2. Brown argues that Crown's product was defective at the time of sale. That question, however, was answered by the jury in favor of Crown.

duty to warn indirect, known purchasers as it applies to the facts of this case.

### Question Two

Under Maine law, how is a jury's dollar adjustment for comparative negligence to be applied where a portion of the original damages award is reduced pursuant to the statutory damage cap.

[¶ 19] Pursuant to Maine's comparative negligence statute, 14 M.R.S. § 156, a jury may consider the injured or deceased party's fault in causing damages. Section 156 provides, in part:

**Comparative negligence**

When any person suffers death or damage as a result partly of that person's own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage may not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof must be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

When damages are recoverable by any person by virtue of this section, subject to such reduction as is mentioned, the court shall instruct the jury to find and record the total damages that would have been recoverable if the claimant had not been at fault, and further instruct the jury to reduce the total damages by dollars and cents, and not by percentage, to the extent considered just and equitable, having regard to the claimant's share in the responsibility for the damages, and instruct the jury to return both amounts with the knowledge that the lesser figure is the final verdict in the case.

14 M.R.S. § 156.

[¶ 20] The wrongful death statute in effect at the time of Thomas Brown's death, 18–A M.R.S. § 2–804(b) (2006), capped damages awarded in a wrongful death action for the loss of comfort, society, and companionship of the deceased at $400,000.

[¶ 21] Section 2–804(b) provided, in part:

The jury may give such damages as it determines a fair and just compensation with reference to the pecuniary injuries resulting from the death to the persons for whose benefit the action is brought and in addition shall give such damages as will compensate the estate of the deceased person for reasonable expenses of medical, surgical and hospital care and treatment and for reasonable funeral expenses, *and in addition may give damages not exceeding $400, 000 for the loss of comfort, society and companionship of the deceased,* including any damages for emotional distress arising from the same facts as those constituting the underlying claim, to the persons for whose benefit the action is brought....

*Id.* (emphasis added).

[¶ 22] This question presents an issue of first impression. We must determine whether the jury's assessment of $200,000 for the deceased's comparative negligence should be accounted for before or after application of the recovery limits of $400,000 imposed on the surviving spouse's loss of consortium damages by section 2–804(b).

[¶ 23] In order to fully address the question, we must determine whether a consortium claim is a derivative or an independent claim. We have previously treated loss of consortium claims as independent claims. *See, e.g., Parent v. E. Me. Med. Ctr.,* 2005 ME 112, ¶¶ 10–18, 884 A.2d 93, 95–97 (holding that a consortium claim is not barred by the prior settlement of the injured spouse's claim); *Hardy v.*

*St. Clair,* 1999 ME 142, ¶¶ 7–12, 739 A.2d 368, 370–72 (holding that a consortium claim was not barred by the injured spouse's release of his claim). In *Morris v. Hunter,* we did not address the issue of whether a consortium claim is derivative of the injured spouse's liability claim or independent and, thus, not subject to defenses that may be asserted against the injured spouse. 652 A.2d 80, 82 (Me.1994). After further consideration, we conclude that loss of consortium claims necessarily arise from the same negligent act as the underlying tort claims and are therefore subject to the same rules and limitations. Accordingly, we hold that a loss of consortium claim is a derivative claim, and to the extent our prior decisions have held otherwise, we overrule those decisions.

[¶ 24] The comparative negligence statute, 14 M.R.S. § 156, requires the fact-finder to make two separate and distinct decisions: first, to determine liability, and second, to apportion the damages between two blameworthy parties in a just and equitable manner. *Jackson v. Frederick's Motor Inn,* 418 A.2d 168, 172 (Me.1980). Following the trial court's instructions in this case, the jury first assessed total damages against Crown in the amount of $4,200,000, and then reduced that total by $200,000 to reflect Brown's own negligence. As noted above, the jury was unaware that the award it intended, $4,000,000, would have to be further reduced to reflect the statutory cap on consortium damages.

[¶ 25] The statute mandates that the jury is to assess a sum for comparative negligence and then subtract that sum on a dollars and cents basis from its total damages award. *See* 14 M.R.S. § 156. If the accounting for comparative fault occurs first, and the statutory damage cap pursuant to 18–A M.R.S. § 2–804(b) is then applied against the specific, reduced

amount of damages awarded for consortium, the jury's intention will most accurately be reflected, and the statutory cap will be imposed only against that portion of the award that is to be "capped." Other states have also found that the reduction for comparative negligence should be made before the application of the caps. *See McAdory v. Rogers,* 215 Cal.App.3d 1273, 1277–81, 264 Cal.Rptr. 71, (Cal.Ct.App. 1989); *Rodriguez v. Cambridge Hous. Auth.,* 59 Mass.App.Ct. 127, 795 N.E.2d 1, 9 (2003).

[¶ 26] In order to determine the proper final award, trial courts—not jurors, who are unaware of any caps—will have to determine precisely how the deduction for comparative negligence has impacted the consortium award. In this case, the trial court began its computation by recognizing that the jury's overall finding of a comparative negligence offset of $200,000, when compared to its determination of total damages ($4,200,000), reflected a 4.7619% reduction. The magistrate judge then reduced the jury's awards for economic damages and pain and suffering ($800,000 and $400,000, respectively) by $38,095 and $19,048 to accomplish the jury's intent. However, before making the comparative negligence reduction to the award for loss of consortium, the court capped the jury's award. The order of these mathematical events is incorrect. For the reasons explained above, the reduction for the comparative negligence determination should occur first, and then the result of that calculation is capped. The resulting award, using this method, is $1,542,857.

[¶ 27] We agree that the method used by the trial court—as we now amend it to first reduce the award by the comparative negligence assessment—does honor the jury's determination that Brown shared some responsibility for the accident, while at the same time reflecting the legisla-

ture's determination that consortium awards must not exceed $400,000.

[¶ 28] We therefore answer the second certified question as follows: A jury's finding of comparative negligence should be applied before any statutorily mandated caps on damages are subtracted from the total amount of damages.

The entry is:

We answer certified question (1): "No, Maine law does not incorporate Restatement (Third) of Torts: Products Liability § 10. On these facts, however, Maine law recognizes a post-sale duty to warn indirect, known purchasers." We answer certified question (2): "A jury's dollar adjustment for comparative negligence is to be applied before the original damages award for consortium is reduced pursuant to the statutory damage cap."