STATE OF MAINE                                              SUPERIOR COURT
                                                               CIVIL ACTION
YORK, ss.                                              DOCKET NO. CV-07-314
                                                       CivR - YOK - 7/27 2010

LYNDA GOODELL, et al.,

            Plaintiffs

v.                                                ORDER

N.V. MICHEL VAN de WIELE SA,
et al.,

            Defendants

Plaintiff Flemish Master Weavers, Inc., brought this action against defendants
N.V. Michel Van de Wiele SA and Van de Wiele-IRO, Inc., to recover on theories of
strict product liability, breach of warranty, and negligence. The defendants have moved
for summary judgment.  The Motion is Granted in part and Denied in part, as follows.

## BACKGROUND

The plaintiff, Flemish Master Weavers, Inc. ("Flemish"), is a Maine corporation in
the business of manufacturing rugs and carpets. Flemish used to be known as the
Rainbow Rug Co. Defendant N.V. Michel Van de Wiele SA and Van de Wiele-IRO, Inc.
(collectively "VDW") are corporations in the business of designing, manufacturing,
selling, and distributing machinery and equipment used in the manufacture of rugs and
carpets. Defendant DeMol was a corporation that engineered, designed, and
manufactured machinery and equipment used in the manufacture of rugs and carpets,
and would sell and install such machinery.[1]

---

[1]     DeMol was originally named as a codefendant in this litigation, but was dismissed upon
discovery that it had gone bankrupt and ceased to be a going concern.

On or about May 5, 1995, Flemish purchased a six-color, six-frame loom from VDW for the manufacture of face-to-face carpeting. (Supp. S.M.F. ¶ 2; Add'l S.M.F. ¶ 1.) Flemish also purchased from VDW a creel system manufactured by DeMol, to be used in conjunction with the loom. (Supp. S.M.F. ¶ 2.) The system originally consisted of two upper and two lower creels, with the top and bottom creels being separated by a particleboard subfloor. (Add'l S.M.F. ¶ 2.) Each lower creel was loaded with eight bobbins, while each upper creel had seven bobbins. (Add'l S.M.F. ¶ 2.) Eight-bobbin creels are common in the industry. (Add'l S.M.F. ¶ 9.) The entire loom-and-creel system functioned in this configuration for approximately five years without incident. (Supp. S.M.F. ¶ 3.)

In the year 2000, Flemish undertook to modify its system in order to accept work that required an eight-color loom. (Supp. S.M.F. ¶ 4.) Flemish contacted VDW, who agreed to modify the loom but refused to modify the creels. (Supp. S.M.F. ¶ 5; see Add'l S.M.F. ¶ 7.) VDW offered to sell Flemish new eight-bobbin creels, and alternatively referred Flemish to DeMol to modify the existing creels. (Supp. S.M.F. ¶ 5.) Flemish chose to pursue the modification and contacted DeMol. DeMol provided Flemish with drawings for the project, sold Flemish the necessary parts, and provided personnel to modify the first creel. (Supp. S.M.F. ¶ 8.) Flemish employees modified the remaining three creels after receiving instruction from DeMol. (Supp. S.M.F. ¶ 9.) DeMol billed Flemish directly for its work. (Supp. S.M.F. ¶ 10.)

To modify the creel system, DeMol and Flemish added an eighth row of bobbins to the upper creels, and added five rows of bobbins to the back of the system. (Add'l S.M.F. ¶ 3.) This added 1,760 bobbins weighing a total of approximately 54,332 pounds to the system. (Supp. S.M.F. ¶ 11.) Only the upper creels were modified, and the

original frames and hardware were all reassembled into their original configurations. (Add'l S.M.F. ¶¶ 14–15.)

While DeMol and Flemish were working on the creels, VDW was on site modifying the loom. (Opp. S.M.F. ¶ 6; Add'l S.M.F. ¶ 7.) VDW knew that the creel modifications were proceeding and was familiar with the technical changes being made. (Add'l S.M.F. ¶¶ 4, 6.) When it had refused to modify the creels itself, VDW may or may not have expressed concern to Flemish that the modification could undermine the system's safety. (Add'l S.M.F. ¶ 5; VDW Depo. 89, 101.)

Flemish had not experienced any problems with the stability of the creels and felt they were structurally sound before the modifications. (Supp. S.M.F. ¶ 13.) However, there were structural design flaws in the system. (Add'l S.M.F. ¶ 13.) Proper installation of the original system required the bracing to have two bolts drilled in to attach them to the subfloor, with washers and/or plates on the bolts to hold them in place. (Add'l S.M.F. ¶ 11.) The original bracing in fact used one bolt and lacked washers or plates. (Add'l S.M.F. ¶ 12.) This improper bolting and the use of particleboard created a structural design problem. (Add'l S.M.F. ¶ 13.) Flemish assumed that DeMol had evaluated whether the modifications would necessitate additional bracing, and the original system was not altered. (Supp. S.M.F. ¶ 12; Add'l S.M.F. ¶ 15.)

The modified system performed without incident for approximately one year. Then, on October 11, 2001, one of the upper creels collapsed. (Pl.'s Compl. ¶ 14.) Lynda Goodell, a Flemish employee, was injured in the collapse and Flemish's property was damaged. (Pl.'s Compl. ¶ 14.) When the creel collapsed, the bolts on the subfloor pulled though the particleboard. (Add'l S.M.F. ¶ 16.)

Lynda Goodell, her husband Ira Goodell, and Flemish filed a complaint against VDW, DeMol, and DNS Industries on October 4, 2007. The complaint included counts

3

for strict liability, breach of warranty, negligence, and loss of consortium on behalf of Ira Goodell. Defendant DeMol was dismissed from the action when the plaintiffs learned that the company was bankrupt, and DNS Industries was never located or served. Plaintiffs Lynda and Ira Goodell resolved their claims through mediation and have left this litigation. What remains are Flemish's claims for strict liability, breach of warranty, and negligence against VDW. VDW moves for summary judgment on all claims.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745, 747 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179). Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)).

VDW contends that it cannot be held strictly liable under product liability because the creels were not defective when it sold them to Flemish in 1995, and Flemish significantly modified the creels prior to their collapse in 2001. It argues that the modification was also an intervening cause relieving it of negligence liability, and should further insulate it from liability for breach of warranty.

Maine law imposes strict liability on the seller or manufacturer of a defective product that "is expected to and does reach the user or consumer without significant change in the condition in which it is sold" and subsequently causes physical harm. 14

4

M.R.S. § 221 (2009); *Marois v. Paper Converting Machine Co.*, 539 A.2d 621, 623 (Me. 1988). A change, even if substantial, is not "significant unless the change relates to the essential features and to the safety of the product" and is unforeseeable. *Marois*, 539 A.2d at 624. Thus, the seller will be liable despite a substantial alteration to its product if "the modification was, or should have been, foreseen and (a) is a contributing cause of the injury, or (b) enhances the injury, or (c) increases the likelihood of its occurrence . . . ." *Id.*

Initially, there is a question of fact as whether the creels were defective when VDW first sold them in 1995. VDW argues that they were not defective for their intended purpose because they functioned without incident for five years. Flemish points out that the creels were improperly braced and bolted in their original condition. The Court will assume that a product defect existed for the purpose of this motion.

If VDW sold defective creels in 1995, and they subsequently caused physical harm in 2001, VDW should be strictly liable. VDW argues, however, that the modification performed in 2000 was unforeseeable at the time of sale and was a significant change absolving VDW of strict liability as a matter of law. Flemish counters that eight-bobbin creels are common in the industry and VDW could have foreseen that Flemish would seek to add an eighth row of bobbins to its seven-bobbin creels. Foreseeability is generally a question of fact. *Ames v. DiPietro-Kay Corp.*, 617 A.2d 559, 561 (Me. 1992). The record does not resolve whether VDW should have foreseen the modification in 1995, and summary judgment on this point is inappropriate.

VDW may not be relieved from strict liability even if the modification was unforeseeable in 1995 because VDW had actual notice of the modification in 2000. The Law Court has not specified whether a significant change must have been unforeseeable *at the time of sale* in order to relieve the seller of strict liability under section 221.

5

However, where the buyer of a product gives the seller actual notice and specifications of the changes to be made as happened in this case, the fact that notice came five years after the sale should not matter. *See Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 17, 960 A.2d 1188, 1193 (Law Court found continuing duty to warn of new dangers where manufacturer knew of hazard, had developed a method to reduce hazard, was in actual contact with user, and had inspected the offending equipment). There is no question that the creels VDW sold caused physical harm to Flemish's property. Given that Flemish told VDW about the modifications, VDW could be strictly liable if it sold the creels in a defective state and the subsequent modifications were (a) "a contributing cause of the injury, or (b) enhanced the injury, or (c) increased the likelihood of its occurrence . . . ." *Marois*, 539 A.2d at 624. Questions of fact remain as to whether the creels were defective and what role the modifications played in their collapse. Summary judgment is thus denied on Count I.

The same considerations indicate that summary judgment is inappropriate on Count III for negligence. To recover for negligence, a plaintiff must show: "(1) a duty owed to the plaintiff by the defendant; (2) the defendant's breach of that duty; and (3) injury of the plaintiff by that breach." *Brown*, 2008 ME 186, ¶ 14, 960 A.2d at 1193. VDW owed Flemish a duty to provide a reasonably safe, non-defective product. *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 941 (Me. 1982). Whether it did so remains an unanswered question of fact. However, VDW claims that the modifications relieved it of any duty to Flemish. This argument really seems to be premised on proximate causation, i.e. that the modification was an unforeseeable intervening cause of the accident, "without which the result would not have occurred." *Wing v. Morse*, 300 A.2d 491, 495 (Me. 1973).

6

A negligent act proximately causes harm if it was (a) "a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." *Id.* at 495–96. The concept is founded on the foreseeability of the resulting injury and raises a question of fact. *Ames*, 617 A.2d at 561. Here, whether VDW sold Flemish a defective product remains a question of fact. If the creels were defective in 1995, the subsequent modification's role in causing their collapse remains unclear. A jury will have to determine whether the modification was foreseeable and how it contributed to Flemish's injury. VDW's motion for summary judgment on Count III is denied.

Finally, summary judgment is partially denied on Count II, breach of warranty. Maine's version of the U.C.C. imposes an implied warranty of merchantability in contracts for sales.[2] 11 M.R.S. § 2-312 (2009). As discussed above, whether VDW sold Flemish defective creels, and whether those original defects proximately caused Flemish's injury remain unresolved questions of fact. A jury could find from the evidence presented that the creels were improperly braced when sold, that the subsequent modifications were both foreseeable and foreseen in fact, and that the original faulty bracing was a substantial factor in the creels' collapse. The improper bracing could constitute a breach of warranty and this portion of Count II should survive VDW's motion.

The U.C.C. also imposes an implied warranty of fitness for a particular purpose under certain circumstances. 11 M.R.S. § 2-315 (2009).

> It requires that: (1) the purchaser have a particular purpose outside the scope of ordinary purposes; (2) the seller at the time of contracting has reason to know of the particular purpose; (3) the seller has reason to know that the purchaser is relying on the seller's skill or judgment to

---

[2] There is no dispute that VDW is a merchant subject to the U.C.C.

furnish appropriate goods; and (4) the purchaser must, in fact, rely upon the seller's skill or judgment.

*Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 197 (Me. 1990). While the loom and creel system is complex, required numerous specifications, and had to be assembled on site, Flemish has not shown that it intended to use the system for anything but its usual purpose. This is simply not a situation where section 2-315 applies, and VDW is granted summary judgment on Count II insofar as it asserts claims under the warranty of fitness for a particular purpose. Flemish has not identified any express warranties.

## CONCLUSION

VDW's motion for summary judgment on Counts I, II and III insofar as it asserts a claim under 11 M.R.S. § 2-314's implied warranty of merchantability is Denied. Summary judgment on Count II to the extent it relates to 11 M.R.S. § 20315's implied warranty of fitness for a particular purpose or other unidentified warranties is Granted.

The clerk may incorporate this order in the docket by reference.

Dated:        July 27, 2010

G. Arthur Brennan
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
THOMAS MARJERISON
AARON K. BALTES
NORMAN HANSON & DETROY
PO BOX 4600
PORTLAND ME   04112-4600

ATTORNEY FOR DEFENDANT:
WENDELL LARGE
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME   04112-9545