STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-14-94

PATRICK F. MUTRIE and
JOHANNA M. MUTRIE, as parents
and next best friend of ETHAN J.
MUTRIE, a minor,

Plaintiffs,

v.

**ORDER**

ADAM MCDONOUGH and
LINDSAY MCDONOUGH,
individually and in their capacity
as parents, legal guardians, and next
best friend of TYLER MCDONOUGH,
a minor,

Defendants.

## I. Background

### A. Procedural Posture

This case arises out of an incident at a youth football game. Patrick and Johanna Mutrie, parents and next best friends of Ethan J. Mutrie ("the Mutries"), bring various tort claims against Adam and Lindsay McDonough, parents and next best friends of Tyler McDonough ("the McDonoughs"). The court previously denied a motion to dismiss Count II of the complaint, which asserts a claim for negligent infliction of emotional distress. Before the court is defendants' motion for summary judgment on all counts.

### B. Facts

Plaintiff Ethan Mutrie and defendant Tyler McDonough were participants in a youth football game that occurred on October 21, 2012. (Def.'s S.M.F. ¶ 1.) Tyler played for the Saco Junior Trojans and Ethan played for the Scarborough "white team." (Def.'s

1

S.M.F. ¶¶ 2-3.) Both were ten years old at the time of the game. (Def.'s S.M.F. ¶¶ 2-3.) Tyler was over 120 pounds and Ethan was approximately 70 pounds. (Def.'s S.M.F. ¶¶ 16, 18.)

Ethan, playing defensive line, was lined up against Tyler. During one play, the two began shoving each other after the ball was snapped and continued to push each other after the play had ended. (Def.'s S.M.F. ¶¶ 4-6.) Ethan turned and attempted to return to the huddle after the whistle blew, but Tyler grabbed his jersey and placed him in a headlock. (Def.'s S.M.F. ¶ 6.) Ethan's father witnessed this; he testified in his deposition that around ten to fifteen seconds after the whistle had blown, Tyler grabbed Ethan with his left arm on the back of his neck, almost like a "horse collar" and pulled Ethan into him. (Def.'s S.M.F. ¶ 9.) Tyler then wrapped his right arm underneath Ethan's helmet and swung his body approximately two and a half feet into the air before throwing him into the ground. (Def.'s S.M.F. ¶¶ 10-11.) Ethan "blanked out" after he was placed in the headlock. (Def.'s S.M.F. ¶¶ 6-7.) Ethan was hurt on the play and did not return. (Def.'s S.M.F. ¶ 19.) Referees ejected Tyler from the game and he was suspended for the following game. (Def.'s S.M.F. ¶¶ 21-22.) After he was ejected, Tyler removed his helmet and used profanities. (Pl.'s Add'tl S.M.F. ¶ 7.)

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact . . . and that any party is entitled to a judgment as a matter of law." M.R. Civ. P. 56(c).

2

Plaintiffs' complaint alleges the following counts: (1) negligence, (2) negligent infliction of emotional distress, (3) assault and battery, (4) intentional infliction of emotional distress, and (5) battery.

Defendants move for summary judgment on all counts largely on the theory that plaintiffs cannot recover in tort because the conduct and injury suffered are inherent in a contact sport like football. Defendants thus argue that based on the undisputed facts, they are entitled to judgment as a matter of law.

### B. The "Contact Sports" Exception

Defendants primarily seek summary judgment urging the court to adopt the "contact sports exception." The contact sports exception is a doctrine applied in Illinois and several other jurisdictions that modifies the standard of care when the parties are playing a contact sport. It is closely related to assumption of the risk doctrine. *Karas v. Strevell*, 884 N.E.2d 122, 131 (Ill. 2008). The contact sports exception bars recovery in negligence for injuries suffered in a contact sport, unless "caused by willful and wanton or intentional misconduct." *Pfister v. Shusta*, 657 N.E.2d 1013, 1014 (Ill. 1995).

The rationale as it relates to football has been explained as follows:

The playing of football is a body-contact sport. The game demands that the players come into physical contact with each other constantly, frequently with great force. The linemen charge the opposing line vigorously, shoulder to shoulder. The tackler faces the risk of leaping at the swiftly moving legs of the ball-carrier and the latter must be prepared to strike the ground violently. Body contacts, bruises, and clashes are inherent in the game. There is no other way to play it.

3

*Karas*, 884 N.E.2d at 132 (quoting *Vendrell v. School District No. 26C*, 376 P.2d 406, 412 (1962)).[1]

The contact sports exception modifies the defendant's ordinary duty to exercise reasonable care, imposing only a duty to refrain from willful, wanton, or intentional conduct. *Karas*, 884 N.E.2d at 131 ("What courts often call 'primary assumption of risk' is actually a doctrine about the defendant's liability or duty.") (quoting Restatement (Third) of Torts: Apportionment of Liability, § 2 (3d ed. 2000)). Other jurisdictions modify duty and hold that individuals playing sports have a duty to refrain from reckless conduct. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 7 (3d ed. 2010) ("[S]ome courts[2] have modified the general duty of reasonable care for those engaging in competitive sports to a more limited duty to refrain from recklessly dangerous conduct.")

The default rule is that a defendant owes a duty of reasonable care to avoid causing harm to reasonably foreseeable plaintiffs. *See Cameron v. Pepin*, 610 A.2d 279, 281 (Me. 1992). Duty presents a mixed question of law and fact, involving "a multi-

---

[1] In *Vendrell*, the Oregon Supreme Court held that a plaintiff who had been "tackled hard" could not recover in tort for his injuries. The Oregon legislature later passed a statute in reaction to *Vendrell* that effectively abolished implied assumption of the risk as a bar to tort recovery. *See Blair v. Mt. Hood Meadows Dev. Corp.*, 630 P.2d 827, 831 (Or. 1981).

[2] "Cases recognizing a recklessness standard of liability for harm caused during recreational and sporting activities include *Knight v. Jewett*, 834 P.2d 696 (Cal. 1992) (coed touch football); *Jaworski v. Kiernan*, 696 A.2d 332 (Conn. 1997) (coed soccer); *Hoke v. Cullinan*, 914 S.W.2d 335 (Ky. 1995) (tennis); *Gray v. Giroux*, 730 N.E.2d 338 (Mass. App. Ct. 2000) (golf); *Ritchie-- Gamester v. City of Berkley*, 597 N.W.2d 517 (Mich. 1999) (ice skating at ice arena); *Ross v. Clouser*, 637 S.W.2d 11 (Mo. 1982) (slow-pitch soft-ball); *Dotzler v. Tuttle*, 449 N.W.2d 774 (Neb. 1990) (pickup basketball); *Schick v. Ferolito*, 767 A.2d 962 (N.J. 2001) (golf); *Marchetti v. Kalish*, 559 N.E.2d 699 (Ohio 1990) (game of "kick the can"); *Kiley v. Patterson*, 763 A.2d 583 (R.I. 2000) (coed soft-ball); *Monk v. Phillips*, 983 S.W.2d 323 (Tex. App. 1998) (golf)." Restatement (Third) of Torts: Liability for Physical and Emotional Harm, § 7 (3d ed. 2010).

4

factored analysis that necessarily evokes policy-based considerations including the just allocation of loss." *Brown v. Delta Tau Delta*, 2015 ME 75, ¶ 9, __ A.2d __.

The Law Court would likely apply ordinary duty and standard of care principles to the present case. First, the Legislature has seen fit to modify duty and the standard of care for skiing, but no other sports. *Compare* 32 M.R.S. § 15217 (barring recovery in tort for injuries that result from the inherent risks of skiing), *with Noffke v. Bakke*, 2009 WI 10, ¶ 14, 760 N.W.2d 156 (construing Wisconsin statute that modifies duty to avoid only reckless or intentional harms for participants in all recreational activities involving physical contact). The Law Court has construed that statute narrowly and would likely hesitate to apply the same principle outside the skiing context, absent some legislative authority. *See Merrill v. Sugarloaf Mt. Corp.*, 2000 ME 16, ¶¶ 10-12, 745 A.2d 378 (distinguishing a Vermont statute and declining to place burden of proof on plaintiffs to disprove injuries were proximately caused by an inherent risk of skiing).

Second, the basis for the contact sport exception—limiting duty based on implied assumption of the risk—has generally limited viability in Maine law. As observed by a leading treatise, "the doctrine of assumption of the risk has been abolished in Maine except in certain limited circumstances." Simmons, Zillman & Gregory, *Maine Tort Law* § 17.03 at 581; *see also Merrill*, 2000 ME 16, ¶ 9 n.3, 745 A.2d 378 ("Although assumption of the risk remains in our jurisprudence, see M.R. Civ. P. 8(c), it does so in only limited form.") To the extent voluntary implied (as opposed to contractual) assumption of the risk remains, the principle has been merged into comparative negligence, which replaced contributory negligence. *See* 14 M.R.S. § 156; *Wilson v. Gordon*, 354 A.2d 398, 401-02 (Me. 1976) ("[V]oluntary assumption of the risk . . . is

but a form of contributory fault. That being so, our comparative negligence statute is clearly intended to abolish the doctrine of so-called voluntary assumption of the risk.")

Comparative negligence could limit a plaintiff's damages, but unlike contributory negligence, it is not an absolute bar to recovery. *See Allen v. Dover Co-Recreational Softball League*, 807 A.2d 1274, 1283 (N.H. 2002) (declining to adopt assumption of the risk as an absolute bar and instead resorting to ordinary tort principles of duty and reasonable care to evaluate negligence claim in sports context). Comparative negligence instead concerns the allocation of damages and is a question of fact. *See Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶ 24, 960 A.2d 1188 ("The comparative negligence statute, 14 M.R.S. § 156, requires the fact-finder to make two separate and distinct decisions: first, to determine liability, and second, to apportion the damages between two blameworthy parties in a just and equitable manner."); *see also Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 7, 697 A.2d 417 ("The assessment of damages is within the sole province of the fact finder.") (citation omitted).

The court declines to apply the contact sports exception. But even assuming the Law Court would, notwithstanding the foregoing analysis, elect to adopt the doctrine, summary judgment would still be inappropriate. Construing the facts and drawing all reasonable inferences in favor of the plaintiff, a reasonable fact-finder could conclude the conduct was "willful or wanton" and thus not an inherent risk of playing football. Tyler's headlock occurred well after the whistle had blown. Ethan had turned away from Tyler and was no longer engaging him at the time of contact. While tackles and shoves are ordinary contact in football games, lifting a player by the neck to throw him through the air and into the ground is not ordinary, at least not as a matter of law. This presents an

6

issue of fact that cannot be resolved on summary judgment. *See Merrill v. Sugarloaf Mt. Corp.*, 1997 ME 180, ¶ 7, 698 A.2d 1042 (holding whether a plaintiff's injuries caused by drainage ditch were caused by an inherent risk of skiing "is a question of fact that must be submitted to the jury.").[3]

In sum, the court declines to apply the contact sport exception and concludes that there are disputed issues of material fact that preclude summary judgment for the defendant on this ground.

### C. Emotional Distress

Defendants next argue that plaintiffs' negligence infliction of emotional distress (Count II) and intentional infliction of emotional distress (Count IV) claims fail as a matter of law.

The elements of intentional infliction of emotional distress are as follows:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so "extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe that no reasonable [person] could be expected to endure it."

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18. Negligent infliction of emotional distress tracks the elements of an ordinary negligence claim: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." *Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18.

---

[3] Merrill construed a prior version of a statute that codified assumption of the risk doctrine only with regards to skiing. The current version is 32 M.R.S. § 15217, which still only applies to skiing.

There is "a duty to act reasonably to avoid emotional harm to others in very limited circumstances . . . [including] when the wrong doer has committed another tort." *Id.* ¶ 19.

Defendants argue that the plaintiffs' claim for IIED fails because the conduct, while bad, does not rise to the necessary level—"extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community" and because plaintiffs do not allege Tyler acted intentionally. Defendants argue the claim for NIED fails because the tort is "subsumed" into any recovery under the other tort claims asserted, and additionally because the plaintiffs have failed to support a claim with prima facie evidence.

In opposing summary judgment, plaintiffs respond only to defendants' "subsume" argument, which indeed was rejected by the court in ruling on the motion to dismiss.[4] Plaintiffs fail, however, to point to prima facie evidence in a statement of material fact supported by a record citation that establishes each element of their emotional distress claims. *Champagne v. Mid-Me. Med. Ctr.*, 1998 ME 87, ¶ 9, 711 A.2d 842 ("To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action."). In particular, plaintiffs[5] have failed to establish Ethan suffered any emotional distress, much less emotional distress sufficiently severe to state a claim. *See Schelling v. Lindell*, 2008 ME 59, ¶ 26, 942 A.2d 1226. While in some cases, "severe" emotional distress may be inferred from the outrageousness of the conduct, *Lyman v. Huber*, 2010 ME 139, ¶¶ 22-23, 10 A.3d 707, plaintiffs do not rely on

---

[4] The court concluded that although the plaintiffs could not recover duplicative damages for the same emotional harms, this did not require dismissal of the NIED count based on the Law Court's decision in *Curtis v. Porter*, 2001 ME 158, 784 A.2d 18.

[5] Ethan's parents do not appear to be asserting bystander theories of liability in the complaint as only Ethan is named individually as a plaintiff to the emotional distress counts.

8

this theory either in the pleadings or in the oppositions to defendants' motion to dismiss and motion for summary judgment. They allege Ethan suffered severe emotional distress, Compl. ¶¶ 31, 42, but fail to substantiate these allegations with prima facie evidence in statements of fact or in the record. *See Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702 (in ruling on motion for summary judgment, court only considers "portions of the record referred to and the material facts set forth in the Rule 56(h) statements")

As the plaintiffs fail to substantiate all the elements of their claims for negligent and intentional infliction of emotional distress with prima facie evidence, summary judgment is appropriate on Counts II and IV. *Champagne*, 1998 ME 87, ¶ 9, 711 A.2d 842.

### D. Vicarious Liability

Defendants lastly move for summary judgment on Count V, which asserts Tyler's parents, Adam and Lindsay McDonough, are vicariously liable for Tyler's torts. Maine follows the Restatement of Torts in holding parents liable for their child's negligence and thus holds "A parent has a duty to: exercise reasonable care so to control his minor child as to prevent it . . . from so conducting itself as to create an unreasonable risk of bodily harm to [others], if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control." *Bedard v. Bateman*, 665 A.2d 214, 214-15 (Me. 1995). Plaintiffs apparently do not rely on this theory, but instead point to the following statutory authority for holding Tyler's parents liable in Count V:

> If a minor who is between 7 and 17 years of age willfully or maliciously causes damage to property or injury to a person and the minor would have been liable for the damage or injury if the minor were an adult and the minor lives with that minor's parents or legal guardians, the parents or

9

legal guardians are jointly and severally liable with the minor for that damage or injury in an amount not exceeding $ 800.

14 M.R.S. § 304.

To proceed on their claim of vicarious liability in Count V, plaintiffs must put forth prima facie evidence to support liability under the statute. There is no dispute that Tyler was the requisite age and lived with his parents at the time of the incident. The only issue is whether plaintiffs put forth prima facie evidence that Tyler acted "willfully or maliciously."

Construing the facts and all reasonable inferences in the plaintiffs' favor, the nature of the conduct and Tyler's actions immediately thereafter support at least an inference that the conduct was willful. Although the record establishes Tyler did not intend to hurt Ethan, he clearly intended to grab him by the neck and throw him to the ground and showed no remorse when Ethan was injured, removing his helmet and using expletives after he was ejected. This is sufficient to deny summary judgment. *See C-K Enters., Inc. v. Depositors Tr. Co.*, 438 A.2d 262, 265 (Me. 1981) (whether intentional conduct was willful or malicious to support award of punitive damages properly submitted to the jury).

Ultimately, the plaintiffs will have the burden to establish willfulness or malice to support vicarious liability under 14 M.R.S. § 304. Damages, if any, will be limited to $800 as set forth in the statute. *Id.*

### III. Conclusion

The defendants' motion for summary judgment will be granted as to Counts II and IV because the plaintiffs have failed to put forth prima facie evidence to support the

emotional distress claims. Disputed issues of material fact preclude summary judgment on the remaining counts.

The entry shall be:

> The Defendants' motion for summary judgment is GRANTED as to Counts II and IV. The motion is DENIED in all other respects.

SO ORDERED.

DATE: April 26, 2016

_____
John O'Neil, Jr.
Justice, Superior Court

11

STATE OF MAINE                                  SUPERIOR COURT
YORK, SS.                                       CIVIL ACTION
                                                DOCKET NO. CV-14-94
                                                JON-YOR- 11-07-14

PATRICK F. MUTRIE and
JOHANNA M. MUTRIE, as parents
and next best friend of ETHAN J.
MUTRIE, a minor,

Plaintiffs,

v.                                              **ORDER**

ADAM MCDONOUGH and
LINDSAY MCDONOUGH,
individually and in their capacity
as parents, legal guardians, and next
best friend of TYLER MCDONOUGH,
a minor,

Defendants.


### I. Background

This is a personal injury suit brought by the parents of Ethan J. Mutrie ("the

Mutries") against Adam and Lindsay McDonough, parents of Tyler McDonough ("the

McDonoughs"). According to the facts alleged in the complaint, Tyler McDonough

placed Ethan Mutrie in a headlock, slammed him into the ground, and injured him while

the two were playing in a youth football game between Scarborough and Saco.

Relevant here is Count II, which alleges a claim for Negligent Infliction of

Emotional Distress ("NIED"). (Compl. 5-6.) The McDonoughs have filed a motion to

dismiss Count II, alleging that the claim is subsumed by the other tort claims, including

Count IV (Intentional Infliction of Emotional Distress), and fails to state a claim for

which relief can be granted.

1

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the court views the facts in the complaint as true and admitted. *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830. The court "examine[s] the complaint . . . to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Doe v. Graham*, 2009 ME 88, ¶ 2, 977 A.2d 391, *quoting Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830. To dismiss for failure to state a claim, the court must determine it is "beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that might be proven in support of the claim.'" *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310, *quoting Plimpton v. Gerrard*, 668 A.2d 882, 885 (Me. 1995).

## III. Discussion

The parties' arguments center on whether the Law Court's decision in *Curtis v. Porter*, 2001 ME 158, 784 A.2d 18, mandates dismissal of Count II.

In *Curtis*, the Law Court contrasted NIED with the tort of intentional infliction of emotional distress ("IIED"), noting "the universe of those who may be liable in tort for the *negligent* infliction of emotional distress is much more limited." *Curtis*, 2001 ME 158, ¶ 17, 784 A.2d 18. The Court recognized three circumstances in which a claim for NIED lies: (1) bystander liability actions, (2) where a special relationship exists between the tortfeasor and the injured claimant, and (3) where the tortfeasor has committed another tort in addition to NIED.[1] *Id.* ¶ 19. The Court continued:

> [W]hen the separate tort at issue allows a plaintiff to recover for emotional suffering, the claim for negligent infliction of emotional distress *is usually subsumed in any award entered on the separate tort*.

[1] In other words, unless (1) or (2) are present, there is no standalone NIED tort.

2

*Id.* (emphasis added).

At issue in *Curtis* were only two claims: one for IIED and the second for NIED. The Court ultimately held that the plaintiff could not recover on her NIED claim if she failed to prevail on her IIED claim:

> Curtis may recover her emotional distress damages through [her IIED] claim. She cannot, however, in the absence of a special relationship or a claim of bystander liability, press her claim to recover for her emotional distress if she does not prevail on the separate intentional infliction claim. Thus, her negligent infliction claim is subsumed in the intentional infliction claim, and the court appropriately granted summary judgment on that claim.

Id. ¶ 22.

The McDonoughs read *Curtis* to mean NIED claims cannot be brought together with an IIED claim when they arise from the same harm. The Mutries maintain *Curtis* means they cannot recover for the same damages under both NIED and IIED.

The Law Court held that Curtis could not recover on her NIED claim if her IIED claim failed for a simple reason: her only remaining claim would be NIED. Because there is no standalone tort for NIED without a duty (such as in bystander and special relationship cases), Curtis' NIED claim failed as a matter of law. *Curtis*, 2001 ME 158, ¶ 19. This is not the situation in the present case because the Mutries bring separate claims for Negligence (Count I) and Assault and Battery (Count III). Thus even if the Mutries' claim for IIED fails, they can still recover for emotional harm under the NIED theory because they can recover for emotional harm under the other torts pled. *White v. Bishop*, 2003 WL 21919837 at *2 (Me. Super. July 7, 2003) (holding negligent operation of a motor vehicle was a separate tort adequate to support emotional distress claim under

3

*Curtis*); *see also Henriksen v. Cameron*, 622 A.2d 1135, 1143 (Me. 1993) (noting plaintiff could recover for emotional injuries from physical assaults).

*Curtis* did provide some sound advice for pleading practice:

> [A]lthough negligent infliction claims are now routinely added to complaints stating a cause of action in tort, this practice is rarely necessary unless the claim is made by a bystander or against one with a special relationship to the plaintiff.

*Id.* ¶ 20. While it may not be *necessary* to bring duplicative causes of action in tort cases, electing to do so does not mean a party fails to state a claim. Litigation strategy is not for the court to decide on a motion to dismiss.

Finally, if the Mutries do ultimately recover for emotional distress, they cannot also recover for the same emotional distress on an NIED theory. *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d 18. The McDonoughs may later raise this if there is a risk of duplicative recovery, but a motion to dismiss is not the appropriate vehicle to reduce damage awards that have yet to materialize.

The Defendants Motion to Dismiss is hereby DENIED.

SO ORDERED.

DATE: .....

11/7/14

_____
John O'Neil, Jr.
Justice, Superior Court

4

CV-14-94

ATTORNEY FOR PLAINTIFFS:
JEFFREY EDWARDS
PRETI FLAHERTY BELIVEAU PACHIOS LLP
PO BOX 9546
PORTLAND ME  04112


ATTORNEY FOR DEFENDANTS:
MATTHEW K LIBBY
MONAGHAN LEAHY LLP
P O BOX 7046
PORTLAND ME  04112