STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
Location: Portland

CONTI ENTERPRISES, INC.,

Plaintiff,

v.

Docket No. BCD-CV-15-49 ✓

THERMOGEN I, LLC
CATE STREET CAPITAL, INC.
and GNP WEST, INC.,

Defendants

---

## ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO DISSOLVE ATTACHMENT

Defendants Cate Street Capital, Inc. ("Cate Street"), GNP West, Inc. ("GNP West"), and Thermogen I, LLC ("Thermogen") have filed a Motion to Dismiss all of Conti's claims against Cate Street and GNP West and some of the claims against Thermogen. Cate Street and GNP West have also filed a Motion to Dissolve Attachment addressed to the ex parte order of attachment and attachment upon trustee process granted by the Superior Court on February 4, 2015, modified on February 22, 2015, as to all three Defendants.[1] Oral argument on both motions was held October 1, 2015.

Conti's Complaint arises out of a project at the former Great Northern paper mill in Millinocket. The first count of Conti's five-count Complaint alleges that defendants Thermogen and Cate Street breached a contract with Conti by failing to pay for work Conti performed and for refusing to negotiate a further agreement. The remaining counts are asserted against all three defendants and allege the defendants: were unjustly enriched at

---

[1] The defendants are not moving to dissolve the $3.85 million attachment and trustee process as to Thermogen.

Conti's expense (Count II); breached an implied contract with Conti (Count III); are liable to Conti under a theory of promissory estoppel (Count IV); and breached their contract with Conti entitling Conti to reasonable attorneys' fees, penalties, and expenses pursuant to the Maine Construction Contracts Act (Count V).

For the reasons discussed below, the court denies Defendants' Motion to Dismiss and grants the Motion to Dissolve the ex parte attachment as to Cate Street and GNP West.

*Background*

A.     Allegations in Conti's Complaint

For purposes of the motion to dismiss, the pertinent allegations of Conti's Complaint are to be taken as true, *see Analysis* section A(1), *infra*:

Cate Street wholly owns, manages, and controls Thermogen and GNP West. (Compl. ¶¶ 6-7.) Conti entered into a contract with Thermogen to improve and redevelop property located at the former Great Northern Paper Mill in Millinocket so that it could become a wood pellet production plant (the "Project"). (*Id.* at ¶ 12.) Thermogen holds a leasehold interest in and to the former paper mill (the "Project Site"). (*Id.* at ¶ 14.) GNP holds the fee interest in the Project site and is participating and cooperating with Thermogen in the redevelopment of the Project. (*Id.* at ¶¶ 15-16.) In addition, Cate Street is participating and cooperating with Thermogen by doing business associated with the Project and with Conti. (*Id.* at ¶ 17.) Specifically, Thermogen, by and through Cate Street, agreed with Conti that Conti would be awarded a contract to perform the engineering, procurement, and construction of the Project (the "EPC Agreement"). (*Id.* at ¶ 18.)

Before the final terms of the EPC Agreement could be reached, certain preliminary work had to be performed. (*Id.* at ¶ 19.) Thermogen, by and through Cate Street, entered into a preliminary agreement with Conti to perform said work (the "Pre-EPC Agreement"). (*Id.*)

2

Subsequently, Conti and Thermogen, through Cate Street, made amendments and additions to the Pre-EPC Agreement resulting in a second Pre-EPC Agreement (collectively, the "Pre-EPC Agreements"). (*Id.* at ¶ 20.)

Cate Street performed and assumed duties assigned to Thermogen under the Pre-EPC Agreements, (*Id.* at ¶ 21.) One instance involved Cate Street officers and employees carrying out all business dealings on behalf of Thermogen and making payments—along with another entity allegedly controlled by Cate Street—for a portion of the work performed, supposedly for Thermogen, by Conti under the Pre-EPC Agreements. (*Id.*) Another instance involved the President and CEO of Cate Street assuring Conti that it would receive full payment for its work under the Pre-EPC Agreements. (*Id.*)

The Pre-EPC Agreements required Thermogen—and Cate Street, which had assumed Thermogen's obligations under the Agreements—to pay for Conti's work performed under the Pre-EPC Agreements and to negotiate the EPC Agreement. (*Id.* at ¶ 22.) Conti performed fully under the Pre-EPC Agreements. (*Id.* at ¶¶ 23-24.) Conti's work was induced by representations from Thermogen and Cate Street that Conti would be paid for its work and that the EPC Agreement would be executed. (*Id.* at ¶ 25.) Thermogen and Cate Street, however, have not paid Conti for the work performed under the Pre-EPC Agreements and have not negotiated the EPC Agreement. (*Id.* at ¶¶ 26-27.) Furthermore, Thermogen and Cate Street are utilizing the benefit of Conti's work to enter into an EPC Agreement with other persons or firms to complete and redevelop the Project. (*Id.* at ¶¶ 28-29.)

B.    Facts Outside Conti's Complaint

For purposes of the motion to dissolve attachment, the following further facts are taken to have been established:

3

The Pre-EPC Agreement dated September 19, 2012,[2] provides that it is "made and entered into ... by and between THERMOGEN I, LLC ('Company') and CONTI ENTERPRISES, INC. ('Contractor'). Company and Contractor are sometimes referred to individually as a 'Party' and collectively as the 'Parties.'" (Ex. A, p. 1 to 1/23/15 Conti Aff.) The Pre-EPC Agreement further provides that "[i]t is the intention of the Parties to conclude the final negotiations of the EPC Agreement and to execute it, but neither party makes any commitment to do so until such negotiations are complete."[3] (*Id.* at p. 3.)

On or about September 8, 2015, Cate Street filed a Complaint against Conti in New Jersey State Court. In the New Jersey Complaint, Cate Street alleges that it, *not* Thermogen, entered into preliminary negotiations with Conti regarding the Project. (Ex. A. to Pl.'s Supplemental Mem. in Opp. to Def.'s Mot. to Dismiss (the "New Jersey Complaint") ¶¶ 3-4.) Cate Street also alleged that Conti hired a subcontractor to provide engineering services and materials, and that Cate Street paid the contractor $800,000 to cover the balance of invoices the contractor claimed to have earned working on the Project. (*Id.* at ¶¶ 5-7.)

On or about September 30, 2015, Cate Street amended the New Jersey Complaint to allege that Thermogen and Conti—*not* Cate Street and Conti—entered into preliminary negotiations regarding the Project. (Ex. A. to Def.'s Resp. to Pl.'s Supplemental Mem. in Opp. to Def.'s Mot. to Dismiss (the "First Amended New Jersey Complaint") ¶¶ 5-6.) The First Amended New Jersey Complaint still alleges, however, that Cate Street paid Conti's subcontractor the $800,000 allegedly owed. (*Id.* at ¶¶ 14-15.)

---

[2] The court presumes that this is the second Pre-EPC Agreement, which revised and added to the initial Pre-EPC Agreement.

[3] The Pre-EPC Agreement also addresses multiple contingencies if the EPC Agreement is not finalized and executed. (*Id.* at pp. 2-3.)

*Analysis*

A.   Defendants' Motion to Dismiss

Defendants' motion to dismiss raises two primary issues: 1) whether Conti can recover against any Defendant based on the alleged "agreement to agree" to negotiate the final EPC Agreement; and 2) whether Conti's Complaint states any other legally cognizable claims against Cate Street and GNP West, as opposed to Thermogen.   Defendants' Motion to Dismiss asks the court to consider the initial Pre-EPC Agreement and an unsigned draft of the EPC Agreement even though they were not attached to the Complaint.

When ruling on a motion to dismiss, the court may consider official public documents, documents that are central to the plaintiff's claim, or documents referred to in the complaint whose authenticity is not challenged without converting the motion to one for a summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43.   The purpose of considering these documents is "that if the courts could not consider the[m], 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" *Id.* at ¶ 10 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

Here, although consideration of the Pre-EPC Agreement and unsigned draft format of the EPC Agreement proffered  by the Defendants may be permissible pursuant to *Moody*, the court declines to extend its review beyond the four corners of the Complaint.   The facts are too convoluted to be resolved by simple reference to the Pre-EPC Agreement and the unsigned draft format of the EPC Agreement.  Accordingly, the documents cannot be considered in the manner raised by the parties' arguments without converting the Defendants' motion to dismiss into a motion for summary judgment.  Were the court to go in that direction, the parties would in effect be required to brief the issues all over again, this time with statements of material facts

and the other attributes of summary judgment motion practice, and the court declines to take that step at this early stage of the case.[4]   Thus, in addressing the Defendants' Motion to Dismiss, the court limits its focus to the allegations within the Complaint.

1.    *Motion to Dismiss Standard of Review*

Maine is a notice pleading state, which requires that a complaint give "fair notice of the cause of action, by providing a short and plain statement of the claim showing that the pleader is entitled to relief." *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 16, 19 A.3d 823 (quotations omitted). A complaint "need not identify the particular legal theories that will be relied upon," but it must describe the essence of the claim and allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief. *Id.* at ¶ 17 (quotation and citation omitted).

On review of a motion to dismiss for failure to state a claim, the facts alleged in the plaintiffs' complaint are deemed admitted for purposes of the motion. *Saunders v. Tisher, supra,* 2006 ME 94, ¶ 8, 902 A.2d 830. The court views the complaint "in the light most favorable to plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Doe v. Graham*, 2009 ME 88, ¶ 2, 977 A.2d 391 (quoting *Saunders*, 2006 ME 94, ¶ 8, 902 A.2d 830).

2.    *Whether the Complaint States Any Valid Claim Based on the Agreement to Negotiate a Final EPC Agreement*

Defendants argue that, to the extent Conti's claims allege a breach of an "agreement to agree" to negotiate and execute a final EPC agreement, they should be dismissed because 1) the Pre-EPC Agreement expressly states that neither party is committed to enter a final EPC Agreement and 2) even if the non-commitment language were absent, the terms of the draft

---

[4]  In addition, a summary judgment motion at this stage might well meet with a valid Rule 56(f) request that Conti's obligation to respond be deferred until after the close of discovery.

6

EPC Agreement are not sufficiently definite to represent a binding agreement. Conti responds that it has made out a claim against the defendants for breaching their obligation to negotiate and execute the EPC agreement in accordance with the principles of good faith and fair dealing. Conti contends that its claim is not based on defendants breaching the final EPC Agreement.

The allegations in the Complaint bear out Conti's position on this issue. Specifically, the Complaint alleges that Cate Street and Thermogen breached the Pre-EPC Agreements by failing and refusing to negotiate with Conti in good faith towards the execution of the final EPC Agreement. (Compl. ¶¶ 35-37 (Count I).) The Complaint also alleges that all three Defendants made promises and representations to negotiate in good faith towards the conclusion and execution of the final EPC Agreement. (*Id.* at ¶¶ 50-53 (Count IV).)

These allegations are clearly premised on the breach of a promise to negotiate in good faith towards the execution of the EPC Agreement. *See Pirates v. Cumberland Cnty. Rec. Ctr.*, 2013 Me. Super. LEXIS 293, *8 n.1 (Dec. 6, 2013) (recognizing without question a claim based on the breach of an agreement to negotiate); *see also Butler v. Balolia*, 736 F.3d 609, 614 (1st Cir. 2013) (discussing modern trend favoring enforcement of contracts to negotiate and collecting case law in support thereof). Conti's claim does not call for enforcing the terms of the draft EPC Agreement and does not entirely depend on whether the Defendants were required to execute a final EPC Agreement. Plainly, there are significant issues of causation and damages involved in the merits of a claim for breach of agreement to negotiate, but those are better left to a later phase of the case. For purposes of Rule 12(b)(6), the Complaint states cognizable claims in this regard.

3.      *Whether the Complaint Sets Forth Causes of Action Against Defendants Cate Street and GNP West*

Defendants argue that Conti's claims against GNP West and Cate Street should be dismissed because, under the allegations in the Complaint, Thermogen is the only defendant

7

that incurred obligations to Conti and/or received a benefit from Conti's work. Defendants further argue that the allegations that Cate Street and GNP West "participat[ed] and cooperat[ed]" with Thermogen are insufficient to bind them as parties to the Pre-EPC Agreement or otherwise hold them liable under equitable theories of relief or promissory estoppel for the alleged actions of Thermogen. Conti responds that the Complaint sufficiently alleges a basis for holding Cate Street liable for breach of contract, and for holding Cate Street and GNP West liable based on quasi- or implied contracts and/or a theory of alter ego.

Although the Complaint does not explicitly allege that it seeks to hold Cate Street and GNP liable for the actions of Thermogen by piercing the corporate veil, it provides fair notice that its claim against GNP West and Cate Street are premised, at least in part, on this theory. "[A] court may pierce the corporate veil when equity so demands and may disregard the corporate entity when used to cover fraud or illegality or to justify a wrong." *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 5, 720 A.2d 568 (quotation and citations omitted).

To prevail on an effort to pierce the corporate veil, the plaintiff must establish that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence. *Id.* at ¶ 6. Whether the corporate form should be disregarded involves issues of fact as well as issues of law.[5] *See id.* at ¶ 7; *see also McCain Foods, Inc. v. St. Pierre*, 463 A.2d 785, 787 (Me. 1983).

---

[5] For example, in determining whether the corporate form was dominated, abused, or misused, courts examine a variety of factors including:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business activity[,] assets, or management; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporate assets by the dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; [and] (12) use of the corporation in promoting fraud.

*Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 7, 720 A.2d 568 (quotation omitted).

8

Here, the Complaint alleges that Thermogen and GNP West are wholly owned, controlled, and managed by Cate Street. (Compl. ¶¶ 6-7.)   It also alleges that Thermogen, by and through Cate Street: 1) agreed to award Conti the EPC Agreement to perform the engineering, procurement and construction for the Project (*Id.* at ¶ 18); 2) entered into the Pre-EPC Agreement (*Id.* at ¶ 19); and 3) amended the Pre-EPC Agreement (*Id.* at ¶ 20).   In addition, the Complaint alleges that although the Pre-EPC Agreements were executed in Thermogen's name, both Thermogen and Cate Street performed and assumed the duties under the Pre-EPC Agreements (*Id.* at ¶ 21).   As to GNP West, the Complaint alleges that GNP West holds the fee interest in the Project site and is participating and cooperating with Thermogen in the redevelopment of the project.   (*Id.* at ¶¶ 15-16.)   Conti contends that all three of the defendants received and accepted the benefit Conti allegedly conferred on them through its work on the Project.   (*See id.* at ¶¶ 38-59.)

Viewing these allegations in the light most favorable to Conti, they provide sufficient notice that Conti asks the court to disregard Thermogen's corporate form and hold Cate Street and/or GNP West liable.   Defendants' Motion to Dismiss is denied on these grounds as well as those previously discussed.

B.      Whether the Attachment Against Cate Street and GNP West Should be Dissolved

Acting on an ex parte basis, the Superior Court approved an attachment and trustee process against all three defendants on February 4, 2015.[6]   The court found it was more likely than not based upon Conti's ex parte motion, affidavit and supporting exhibits, that Conti would recover against the defendants in the amount of $3.85 million and that there was a clear danger that the defendants would remove their property from the state otherwise.

---

[6] This order was modified on February 22, 2015 to reflect that, per Conti's first amended complaint, it sought an attachment and trustee process against GNP West, Inc., *not* GNP West, LLC.

9

An attachment obtained through an ex parte application may be dissolved on motion by any person having an interest in the attached property. M.R. Civ. P. 4A(h), 4B(j). When a motion to dissolve is filed, the party that obtained the attachment has "the burden of justifying any finding in the ex parte order that the moving party has challenged by affidavit." M.R. Civ. P. 4A(h), 4B(j).

Cate Street and GNP West's Motion to Dissolve rests on substantially the same grounds as those advanced in support of their Motion to Dismiss. The gravamen of the Motion to Dissolve is that Conti has not shown that it will recover judgment against Cate Street and/or GNP West in the amount of the attachment. However, Cate Street and GNP West have not filed any affidavits challenging the finding regarding likelihood of judgment in the ex parte order of attachment and attachment upon trustee process. Conti points to the lack of affidavits from the moving Defendants in arguing that their motion fails to comply with the rules on motions to dissolve.

However, the court does not read the rules to require that the party moving to dissolve an attachment must always file affidavits in order to obtain relief. The court interprets the operative clause in each rule—""the burden of justifying any finding in the ex parte order that the moving party has challenged by affidavit"—to mean that, if the moving party challenges by affidavit the factual premise for the ex parte order, the non-moving party has to demonstrate that the challenged facts on which the ex parte order was based are more likely true than not true. Thus, the effect of Cate Street and GNP West not filing any affidavits means that, for purposes of their motion, they are not challenging any of Conti's factual assertions. Not having been heard initially because Conti proceeded on an ex parte basis, they are asking the court to revisit the sufficiency of Conti's showing, without adding any additional facts.

10

Nothing in Rule 4A or 4B appears to preclude this approach. Accordingly, the court will address the Motion to Dissolve on its merits. *See* M.R. Civ. P. 81(f).

Because the court's focus on the Motion to Dissolve is broader than that on the Motion to Dismiss, the court will consider the text of the Pre-EPC Agreement, unsigned draft format of the EPC Agreement, and additional documents attached to the affidavit of Kurt Conti filed in support of Conti's initial motion for attachment. Considering these items, the parties' arguments, the initial and amended New Jersey complaints, and the allegations in the Complaint in this case, the court agrees with Cate Street and GNP West that Conti has not demonstrated, on the present record, that it is more likely than not to recover judgment against them in the amount of the attachment.

This is because the plain terms of the Pre-EPC Agreement make clear that it is an agreement between Conti and Thermogen only. While Conti's allegations of alter ego are sufficient to survive a motion to dismiss, they do not demonstrate that it is more likely than not Conti will be able to recover against Cate Street and GNP West. The assertions in Cate Street's initial complaint in the New Jersey action may be admissible as party admissions, but they do not give rise to judicial estoppel, nor do they and Conti's other arguments for maintaining the attachment against Cate Street and GNP West establish it is more likely than not that Conti will recover judgment on its claims that Thermogen was set up as a means to promote fraud, was under capitalized, or that Thermogen's corporate identity must be disregarded to avoid an unjust or inequitable result. *Johnson v. Exclusive Props. Unlimited,* 1998 ME 244, ¶¶ 5-7, 720 A.2d 568.

Cate Street and GNP's Motion to Dissolve the $3.85 million attachment and trustee process against them will be granted, because Conti has not demonstrated it is more likely than not that it will recover judgment in at least that amount against them in the present suit.

11

Plainly, all of the allegations in Conti's complaint can be explored through discovery, and if an adequate basis for a further motion emerges, Conti is free to bring another motion for attachment against Cate Street and GNP.

*Conclusion*

It is ORDERED:

The Motion to Dismiss Cate Street Capital, Inc. and GNP West, Inc. and To Partially Dismiss Claims Against Thermogen I, LLC dated May 1, 2015 is denied.

The Motion To Dissolve Attachment Against Cate Street Capital, Inc. and GNP West, Inc. dated August 21, 2015 is granted. The order approving attachment and attachment upon trustee process granted in the February 4, 2015 Order remains in effect against Thermogen I, LLC.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: October 27, 2015

A.M. Horton
Justice

Entered on the Docket: 10-27-15
Copies sent via Mail ___ Electronically ✓

12

Conti Enterprises, Inc. v. Thermogen I, LLC,
Cate Street Capital, Inc. and GNP West, Inc.

BCD-CV-15-49


### Plaintiff

**Conti Enterprises, Inc.,**
 Counsel:

       *Joseph Bethony, Esq.*
       23 Water St. Suite 400
       PO Box 917
       Bangor, ME 04402


### Defendants


**Thermogen I, LLC,**
**Cate Street Capital**
**and GNP West, Inc.**
Counsel:

       *Brian Champion, Esq.*
       62 Portland Rd.
       Kennebunk, ME 04043