2006 ME 94

**Kristopher T. SAUNDERS**

v.

**Paul TISHER.**

Supreme Judicial Court of Maine.

Argued: Jan. 23, 2006.
Decided: Aug. 2, 2006.

David G. Webbert, Esq. (orally), Johnson & Webbert, Augusta, for the appellant.

George C. Schelling, Esq. (orally), Aaron Fethke, Esq., Gross, Minsky & Mogul, P.A., Bangor, for the appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, DANA, LEVY, and SILVER, JJ.

Dissenting: ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Kristopher T. Saunders appeals from the judgment of the Superior Court (Penobscot County, *Hjelm, J.*) dismissing his complaint pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Saunders's claim is against Dr. Paul Tisher, a licensed practicing psychiatrist. Saunders asserts that the Superior Court erred in determining that his claims against Dr. Tisher are governed by the Maine Health Security Act (MHSA), 24 M.R.S. §§ 2501–2987 (2005), and thus that those claims are barred by the MHSA's three-year statute of limitations contained in 24 M.R.S. § 2902. We are not persuaded by Saunders's assertions, and we affirm the judgment.

I. BACKGROUND

[¶ 2] Saunders's complaint alleges the following facts. In November of 1996, Saunders began counseling with Bangor psychiatrist Paul Tisher. He and Dr. Tisher completed three sessions that month. During the third session, however, Saunders declined to take the medications recommended by Dr. Tisher and terminated their doctor-patient relationship. In response, Dr. Tisher threatened to have Saunders involuntarily committed even though Saunders had no history of violence. After Saunders terminated the doctor-patient relationship with Dr. Tisher in November of 1996, they had no further contact.

[¶ 3] On February 4, 1998, Dr. Tisher signed an application pursuant to 34–B M.R.S. § 3863(1) (2005) to support Saunders's emergency, involuntary commitment to a mental hospital. Saunders's complaint alleges that in the application, Dr. Tisher falsely verified that because of his mental illness, Saunders posed a likelihood of serious harm to himself or others. *See* 34–B M.R.S. § 3863(1)(A). The complaint further alleges that Dr. Tisher "falsely completed" the involuntary commitment application to retaliate against Saunders for terminating Dr. Tisher's services fourteen months earlier.

[¶ 4] Saunders's complaint further alleges that based on Dr. Tisher's application for emergency, involuntary commitment, Saunders was arrested by the Bangor police and forcibly transported and admitted

to Acadia Hospital, where he was held involuntarily until his release twenty-one days later. The complaint asserts that in addition to signing the involuntary commitment application, Dr. Tisher approved Saunders's commitment by telephone, and that, in doing so, he violated applicable legal requirements.

[¶ 5] In February of 2004, Saunders filed his initial complaint against Dr. Tisher arising from the February 4, 1998, commitment, and later, in April of 2004, filed an amended complaint. Saunders's complaint, as amended, asserts three claims: (1) violation of the Maine Civil Rights Act, 5 M.R.S. §§ 4681–4685 (2005), and the Federal Civil Rights Act, 42 U.S.C.A. § 1983 (2003);[1] (2) intentional or reckless infliction of emotional distress; and (3) negligent infliction of emotional distress.

[¶ 6] Dr. Tisher successfully moved for dismissal of Saunders's complaint pursuant to M.R. Civ. P. 12(b)(6), contending that all of the claims asserted are covered by the MHSA and that they are therefore barred for having been filed beyond the MHSA's three-year statute of limitations. *See* 24 M.R.S. § 2902. Saunders then filed this appeal.

## II. DISCUSSION

[¶ 7] The MHSA has a three-year statute of limitations. 24 M.R.S. § 2902. If Saunders's claims fall within the ambit of the MHSA, Saunders would have been required to file his complaint no later than February 2001, three years after his commitment to and discharge from Acadia Hospital. The complaint was not filed until February of 2004, well beyond the MHSA's limitations period.

[¶ 8] Saunders contends, however, that the Rule 12(b)(6) dismissal is improper because his complaint is not governed by the provisions of the MHSA. On a motion to dismiss, facts are not adjudicated, but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint. Accordingly, upon review of a judgment granting a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), we consider the facts stated in the complaint as if they were admitted. *Libner v. Me. County Comm'rs' Ass'n,* 2004 ME 39, ¶ 7, 845 A.2d 570, 572; *Napieralski v. Unity Church of Greater Portland,* 2002 ME 108, ¶ 4, 802 A.2d 391, 392. "[W]e examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig.,* 2000 ME 162, ¶ 3, 759 A.2d 217, 220. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington,* 2001 ME 169, ¶ 5, 785 A.2d 1244, 1246.

[¶ 9] Saunders styles his complaint as a claim for violation of his civil rights for the improper use of the involuntary commitment process by Dr. Tisher, and contends that the claim is not subject to the limitations period within the MHSA. What Saunders describes in his complaint, however, are not actions taken by citizen Tisher, but rather the alleged misuse by Dr. Tisher of his position as a physician, a psychiatrist, to have Saunders involuntarily committed to a mental hospital for treatment that Saunders asserts was not in fact needed.

---

1. At oral argument, Saunders indicated that he is not asserting any State action in connection with his claims and, thus, no longer pursues any claim for violation of 42 U.S.C.A. § 1983 (2003).

As the Superior Court correctly observed, all of the activities allegedly performed by Dr. Tisher and described in the complaint "occurred in a medical setting" and "necessarily implicate [Dr. Tisher's] capacity as a health care provider or health care practitioner." Those actions fall within the ambit of the very broadly worded and all-encompassing MHSA. Because it is clear from the face of the complaint that Saunders failed to bring his action within the three-year limitations period provided in 24 M.R.S. § 2902, which governs all actions subject to the MHSA, the Superior Court properly dismissed his complaint.

[¶ 10] In his complaint, Saunders alleges that Dr. Tisher, who was once Saunders's treating psychiatrist, improperly signed a formal application for emergency, involuntary admission of Saunders to Acadia Hospital, a mental hospital, asserting that Saunders posed a likelihood of serious harm to himself or others. Saunders also alleges that in the application, Dr. Tisher verified that he had considered less restrictive settings and modalities, and asserted "that suitable resources for care and treatment are unavailable in the community." Such verification and assertions are of a kind made by a physician in determining what is the most appropriate mental health treatment for an individual. They are not the statements of a lay person not acting in the capacity of a health care practitioner. The complaint further alleges that Dr. Tisher also approved the admission of Saunders to the hospital by telephone. Such approval by Dr. Tisher would have to be given in his capacity as a physician, and indeed, Saunders alleges a violation of 34–B M.R.S. § 3863, which, in the part most relevant to the allegations, applies only to health care professionals. See 34–B M.R.S. § 3863(2) (2005).

[¶ 11] These actions by Dr. Tisher, although alleged to be improper and badly motivated, are nevertheless actions taken in connection with the provision of health care. Health care is broadly defined as:

preventative, diagnostic, therapeutic, rehabilitative, maintenance or palliative care, services, treatment, procedures or counseling ... that affects an individual's physical, mental or behavioral condition, including individual cells or their components or genetic information, or the structure or function of the human body or any part of the human body. Health care includes prescribing, dispensing or furnishing to an individual drugs, biologicals, medical devices or health care equipment and supplies ....

22 M.R.S. § 1711–C(1)(C) (2005).

[¶ 12] The language of the MHSA regarding the scope of its applicability is very broad. It is made to apply to *all* "action[s] for professional negligence," which are defined as *"any action [s] for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services."* 24 M.R.S. § 2502(6) (emphasis added). We have already interpreted the MHSA to apply to *all* actions for professional negligence against a health care provider or practitioner. *See Butler v. Killoran,* 1998 ME 147, ¶ 6, 714 A.2d 129, 131–32.

[¶ 13] Professional negligence within the meaning of the MHSA is also defined very broadly. For the MHSA to apply to a claim against a health care provider or practitioner, the claim need not be one of negligence. *Musk v. Nelson,* 647 A.2d 1198, 1201 (Me.1994). The "or otherwise" language of section 2502(6) reflects a legislative intent that the MHSA "occupy the field with regard to actions against health care providers." *Id.; see*

*also Dutil v. Burns,* 674 A.2d 910, 911 (Me.1996) (holding that claims for breach of warranty and strict liability are actions for professional negligence within the meaning of the MHSA). We have stated that the "procedural requirements and limitations period [of the MHSA are] applicable in a wide variety of contexts." *Butler,* 1998 ME 147, ¶ 6, 714 A.2d at 132.

■ [¶ 14] The actions of a psychiatrist in determining whether a person should be involuntarily committed pursuant to 34–B M.R.S. §§ 3861, 3863 (2005) constitute the treatment of the mentally ill, and therefore, the provision of health care services. *See Appeal of Sleeper,* 147 Me. 302, 315, 87 A.2d 115, 121–22 (1952); *see also Taylor v. Herst,* 537 A.2d 1163 (Me.1988); *Darling v. Augusta Mental Health Inst.,* 535 A.2d 421 (Me.1987). Saunders's admission to and presence at Acadia Hospital, although alleged to be improper, was nevertheless for mental health treatment involving the provision of medical services.

■ [¶ 15] In *Butler,* we provided a particularly cogent analysis of the rationale supporting such broad applicability of the MHSA:

> The legislative history of the [M]HSA is well documented. In response to an alleged national crisis in the availability and cost of medical malpractice insurance, the Legislature created in 1975 the Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance, an entity more commonly known as the Pomeroy Commission. The Commission was charged with the task of preparing "a proposal to insure the availability of medical and hospital malpractice insurance ... and to develop a more equitable system of relief for malpractice claims." *See* P. & S.L.1975, ch. 73, § 1. In its final report to the Legislature, the Commission confirmed that malpractice insurance rates in

Maine had escalated in recent years, and it proposed comprehensive tort reform within the health care industry designed to stem rising malpractice insurance costs and ensure the continued availability of malpractice insurance to Maine health care providers and practitioners. *See Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance,* Report to the 108th Legislature xv-xxiii (Jan. 22, 1977). The Commission's recommendations, including a proposal to shorten the statute of limitations for actions arising out of patient care, formed the basis of the Health Security Act, which was enacted in 1977 and amended in 1985. *See* P.L. 1977, ch. 492; P.L.1985, ch. 804.

> ... *The Legislature's concerns about the affordability and availability of medical malpractice insurance are implicated by* all *actions involving medical malpractice,* irrespective of whether the malpractice resulted in injury or in death, and irrespective of whether the action is brought on behalf of a decedent or on behalf of a decedent's heirs.

*Butler,* 1998 ME 147, ¶¶ 9–10, 714 A.2d at 132–33 (emphasis added) (footnotes omitted). Thus, the intent of the Legislature in enacting the MHSA was to stem the tide of rising malpractice costs, and thereby the cost of health care in general. To do so, the Legislature essentially made the MHSA applicable to *any* case that could implicate medical malpractice insurance. Furthermore, these limitations of the MHSA are served ·only by preventing health care practitioners from having to defend actions that should be, but have not been, brought pursuant to the MHSA. Thus, in a case such as this, the issues of the applicability of the MSHA and compliance with its requirements are appropriately considered at the motion to dismiss stage of the proceedings. Although Saun-

ders styles his complaint as one for a violation of his civil rights, because the actions of Dr. Tisher described in Saunder's complaint regard health care services, and implicate medical malpractice insurance, the complaint falls within and is subject to the provisions of the MHSA.

[¶ 16] Accordingly, Saunders is required to comply with the procedural provisions of the MHSA. Section 2902 of the MHSA requires that an action subject to the provisions of the MHSA be commenced within three years of the accrual of the cause of action. It is clear on the face of Saunders's complaint that his cause of action accrued in February of 1998. Because his complaint was not filed until February of 2004, well beyond the expiration of the three-year statute of limitations, his complaint was properly dismissed by the Superior Court.

The entry is:

Judgment affirmed.

ALEXANDER, J., with whom CALKINS, J., joins, dissenting.

[¶ 17] I respectfully dissent. The Maine Legislature could never have intended that the Maine Health Security Act sweep so broadly as to cover wrongful acts committed against patients, former patients, or the public at large that involve neither medical negligence nor the provision of health care services. Here the Court construes the MHSA to shield a physician from liability for a vindictive act of retribution committed against a former patient through abuse of civil process, with an intent to inflict emotional distress by depriving the person of his liberty. The MHSA was never intended to extend this far.

[¶ 18] The case is before us on review of a motion to dismiss. The Court's opinion correctly states the standard of review for a grant of a motion to dismiss. That standard requires that we examine the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. Dismissal is warranted when and only when it appears "beyond a doubt" that the plaintiff is not entitled to relief under any set of facts that might be proved in support of the claim. *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245–46. The facts alleged in the complaint and the causes of action asserted must be examined from this perspective, established by our prior precedent. *See id.* Dismissal can be affirmed only if the facts demonstrate, beyond a doubt, that plaintiff is not entitled to relief under some legal theory. Here, at least three causes of action that have nothing to do with medical negligence are presented by the facts.

[¶ 19] Let us look at those facts:

[¶ 20] Saunders is a resident of Bangor and a 1996 Phi Beta Kappa graduate of the University of Maine. Dr. Tisher is a physician who was practicing at Acadia Hospital in Bangor. In November 1996, Saunders sought counseling from Dr. Tisher. At their third meeting, Saunders discharged Dr. Tisher and terminated the doctor-patient relationship. The termination of the relationship occurred when Saunders declined to take medications suggested by Dr. Tisher. Dr. Tisher, in response, threatened to have Saunders involuntarily committed, although Dr. Tisher admitted to Saunders that he would be "stretching" to do so because Saunders had no history of violence. After Saunders terminated the doctor-patient relationship with Dr. Tisher in November 1996, they had no further contact.

[¶ 21] Fifteen months after the doctor-patient relationship terminated and without any further observation of Saunders, Dr. Tisher signed an application pursuant to 34–B M.R.S. § 3863(1) (2005) to support an emergency, involuntary commitment of Saunders to a mental hospital. In this application, Dr. Tisher (1) falsely stated that Saunders, because of mental illness, posed a likelihood of serious harm to himself or others; (2) falsely claimed that he had considered "less restrictive settings and modalities" when no such alternatives had been considered; and (3) falsely asserted that suitable resources for Saunders's care and treatment were unavailable in the community, when he had not pursued such resources before signing the commitment application. The complaint further alleges that Dr. Tisher "falsely completed" the involuntary commitment application to retaliate against Saunders for terminating Dr. Tisher's services fifteen months previously.

[¶ 22] Based upon Dr. Tisher's falsified application for emergency, involuntary commitment, Saunders was arrested by the Bangor police and forcibly transported to and admitted to Acadia Hospital, where he was held involuntarily until his release. The complaint asserts that in addition to signing the involuntary commitment application, Dr. Tisher violated the law by approving Saunders's commitment by telephone. Title 34–B M.R.S. § 3863(2)(A) (2005), requires that any physician supporting an involuntary commitment "has examined the person on the date of the certificate."

[¶ 23] The MHSA protections and procedural requirements are limited to actions that arise from either the provision or failure to provide health care services. Thus, actions for professional negligence are defined as "any action for damages for injury or death against any health care provider, its agents or employees, or health care practitioner, his agents or employees, whether based upon tort or breach of contract or otherwise, arising out of the provision or failure to provide health care services." 24 M.R.S. § 2502(6) (2005).

[¶ 24] The Maine Civil Rights Act authorizes a civil action against "any person" who "intentionally interferes or attempts to intentionally interfere by physical force or violence ... or by the threat of physical force or violence against a person ... with the exercise or enjoyment by any other person of rights secured by [state or federal constitutional or statutory law]." 5 M.R.S. § 4682(1–A) (2005). The Maine Civil Rights Act further provides that "a person has the right to engage in lawful activities without being subject to physical force or violence ... or the threat of physical force or violence ... motivated by reason of ... physical or mental disability ...." 5 M.R.S. § 4684–A (2005).

[¶ 25] Saunders's complaint alleges that Dr. Tisher's improper actions were made in his capacity as an applicant for Saunders's involuntary commitment. An applicant for involuntary commitment may be "[a]ny health officer, law enforcement officer or other person," 34–B M.R.S. § 3863(1), and is not required to be a health care provider. Saunders asserts that in violation of the Maine Civil Rights Act, Dr. Tisher's intentional acts and false statements caused Saunders to be deprived of his liberty as a result of his arrest and involuntary commitment for twenty-one days.

[¶ 26] This record does not preclude Saunders's Maine Civil Rights Act claim "beyond a doubt." The allegations of intentional acts and false statements, leading to police action to deprive Saunders of his liberty, establish a claim under the Maine Civil Rights Act under the low threshold

established by our motion to dismiss jurisprudence. The actions alleged to render Dr. Tisher liable under this claim do not arise from his status as a health care professional. Dr. Tisher's vindictive, intentional act, meant to deprive Saunders of his liberty and settle an old grudge, was not medical negligence.

[¶ 27] Saunders's claim for intentional infliction of emotional distress is subject to similar analysis. To prevail in an action for intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct. *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 15, 711 A.2d 842, 847; *Henriksen v. Cameron*, 622 A.2d 1135, 1139 (Me.1993).

[¶ 28] Saunders's complaint, taken most favorably to Saunders as our jurisprudence demands, makes out each of the three criteria for an intentional infliction of emotional distress cause of action. Unlike the conduct in *Champagne*, the conduct alleged here, if proven as alleged, is certainly conduct "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." 1998 ME 87, ¶ 15, 711 A.2d at 847 (quotation marks omitted). As with the claims generating the civil rights cause of action, the claims of intentional acts and false statements giving rise to an intentional infliction of emotional distress claim have no necessary relation to Dr. Tisher's status as a health care provider. These claims against Dr. Tisher arise from the alleged violations of his duty of care as a member of the public, not violations of any duty arising from his separate status as a health care provider.

[¶ 29] Dr. Tisher's improper use of the "blue paper" to initiate a civil, involuntary commitment proceeding also may be construed to be a wrongful use of civil process giving rise to a cause of action. In a wrongful use of civil process action, a plaintiff must prove, by a preponderance of the evidence, that:

(1) the defendant initiated, procured, or continued a civil proceeding without probable cause;

(2) with a primary purpose other than that of securing the proper adjudication of the claim upon which the proceedings were based; and

(3) the proceedings have been terminated in plaintiff's favor.

*See Pepperell Trust Co. v. Mountain Heir Fin. Corp.*, 1998 ME 46, ¶¶ 15–17, 708 A.2d 651, 656; *Gray v. State*, 624 A.2d 479, 483–84 (Me.1993). For these actions, "probable cause" or "reasonable grounds" for the action has been viewed as information sufficient to justify a person who is calm, and not governed by passion, prejudice, or lack of ordinary caution and care, in believing that there is a factual and legal basis for the action. *See Price v. Patterson*, 606 A.2d 783, 785–86 (Me.1992); *Nyer v. Carter*, 367 A.2d 1375, 1378 (Me.1977).

[¶ 30] Saunders asserts that Dr. Tisher initiated the blue paper commitment proceedings without probable cause for the action, that his primary purpose was something other than securing the commitment of Saunders for Saunders's protection and, that by Saunders's release, the proceedings have been terminated in his favor. Thus, the record does not exclude "beyond a doubt" a claim for wrongful use of civil proceedings.

[¶ 31] Dismissal of a complaint pursuant to M.R. Civ. P. 12(b)(6) is warranted only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts" that might be proved in support of the claim. *Johanson*, 2001 ME 169, ¶ 5, 785 A.2d at 1246. Examined from this perspective, Saunders's complaint, viewed most favorably to Saunders, asserts that he had no doctor-patient relationship with Dr. Tisher; Dr. Tisher had no contact with Saunders for fifteen months; Dr. Tisher made false statements when he initiated a civil commitment action, not to provide health care, but to punish Saunders for the earlier termination of his services; Dr. Tisher did not have a reasonable belief that Saunders's involuntary commitment was required; and Dr. Tisher's acts caused Saunders to be deprived of his liberty, resulting in extreme emotional injury. These facts do not establish "beyond a doubt" that Saunders could not prove a claim for violation of his civil rights, wrongful use of civil process, and/or intentional infliction of emotional distress by Dr. Tisher. Dr. Tisher violated duties that he holds as a member of the public outside of any "provision or failure to provide health care services" protected under the MHSA. *See* 24 M.R.S. § 2502(6). With the three-year statute of limitations under the MHSA inapplicable, Saunders's claim is subject to the six-year statute of limitations pursuant to 14 M.R.S. § 752 (2005). Under section 752, his action is timely. Accordingly, the dismissal of Saunders's complaint should be vacated.