STATE OF MAINE                   BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                DOCKET NO. BCD-CIV-2021-00026

DOMAH D. DAVIES,        )
                                  )
      Plaintiff,           )
                                    )
     v.                      )     **ORDER GRANTING IN PART AND**
                                    )     **DENYING IN PART DEFENDANT'S**
BANGOR FEDERAL CREDIT       )     **MOTION TO DISMISS**
UNION,                         )
                                    )
      Defendant.        )

Plaintiff Domah D. Davies ("Davies") defaulted on his car loan, and Defendant Bangor Federal Credit Union (the "Credit Union") repossessed and sold the car. In response, Davies filed an Amended Class Action Complaint (the "Amended Complaint") against the Credit Union, setting forth two counts. Count I claims that the Credit Union's repossession notice violates Maine's Uniform Commercial Code (the "UCC"). Count II claims that the Credit Union's deficiency notice violates the UCC. Pursuant to M.R. Civ. P. 12(b)(6), the Credit Union moves to dismiss both counts for failure to state a claim. For the reasons discussed below, the Court grants the Motion to Dismiss with regard to Count I, and denies the Motion with regard to Count II.

## STANDARD OF REVIEW

In reviewing a motion to dismiss under Rule 12(b)(6), courts "consider the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Id.*

1

**FACTS**

According to the Amended Complaint, in 2015 Davies purchased a used Volkswagen Jetta from a car dealer. The Credit Union financed the transaction and took a security interest in the vehicle. The Credit Union thus became the secured party, and Davies made monthly payments to the credit union. In or about July 2020, the Credit Union declared a default. On or about July 24, 2020, the Credit Union repossessed Davies' vehicle. By letter dated that same day, the Credit Union provided to Davies a Notice of our Plan to Sell Property (the "Repossession Notice"). The Repossession Notice provides in relevant part as follows: "You can reclaim the property/collateral back at any time before we sell it by paying us the **full amount** owed the Credit Union, including our expenses. Please contact me by telephone or in writing to determine the exact amount due. All amounts due will be itemized upon request."[1] (Emphasis original)

Davies did not reclaim the Jetta, and at some point thereafter the Credit Union sold Davies' vehicle. By letter dated September 4, 2020, the Credit Union provided to Davies an explanation of the balance due after sale (the "Deficiency Notice"). The Deficiency Notice lists the Unpaid Principal Balance, followed by a description of certain fees and expenses, followed by a line item for "Net Check from Proceeds of Sale," followed by a refund, and concluding with the Balance Due After Sale. The Deficiency Notice does not identify the amount or type of expenses resulting in the "Net Check from Proceeds of Sale."

The Credit union regularly finances the purchase of vehicles for consumer use in Maine. The Credit Union sends substantially the same form Repossession Notice, and the same form Deficiency Notice, to many consumer borrowers across Maine.

---

[1] On a motion to dismiss, the Court may consider documents outside the pleadings when such documents are central to a plaintiff's claim and referred to in the complaint. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43. Here, the Court considers the Repossession Notice and the Deficiency Notice pursuant to the *Moody* exception.

**DISCUSSION**

The two counts contained in the Amended Class Action Complaint are similar, but each will be discussed in turn.

**<u>Count I</u>**

In Count I of the Amended Class Action Complaint, Davies contends that the Repossession Notice is defective because it failed to notify Davies of his right to an accounting. The UCC provides in relevant part that the contents of a repossession notice are sufficient if the notice "[s]tates that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting." 11 M.R.S. §§ 9-1613(1)(d), 9-1614(1)(a). However, no particular phrasing is required. § 9-1614(2). The UCC provides safe harbor language deemed compliant, and notably the safe harbor language does not even use the word "accounting" or mention the charge. § 9-1614(3). Instead, the safe harbor language reflects a more colloquial format: "If you want us to explain to you in writing how we have figured the amount that you owe us, you may call us . . . or write us . . . and request a written explanation." *Id.*

Davies argues that the Repossession Notice did not specifically advise him of his right to an "accounting," but the UCC does not require that the word "accounting" be used in the Notice. Davies acknowledges that the UCC provides alternative safe harbor language, but complains that the Credit Union's Repossession Notice does not use the exact language. However, the UCC does not require any particular phrasing, and the alternative language is provided merely as a safe harbor. *Id.* The UCC does not require the safe harbor language to be used word for word. § 9-1614(6).

Here, the Credit Union's Repossession Notice advised Davies as follows: "Please contact me by telephone or in writing to determine the exact amount due. All amounts due will be itemized

3

upon request." The language used is clear, unambiguous, and understandable. Davies does not allege in the Amended Class Action Complaint that he did not understand the words, or that he was confused by the language. The language is extremely close to the alternative safe harbor language. In simple and plain vernacular, the Credit Union's Repossession Notice advised Davies of his right to an accounting, and thus satisfies the applicable UCC requirement. As a result, Count I fails to state a claim upon which relief can be granted, and the Credit Union's Motion to Dismiss is granted with respect to Count I.

**Count II**

In Count II of the Amended Class Action Complaint, Davies asserts that the Deficiency Notice is defective because it provides information in the wrong order, and by summarily referring to "net" proceeds, fails to disclose the expenses incurred in disposing of the collateral. Davies further maintains that the Credit Union's defective Deficiency Notice is part of a pattern or practice of noncompliance.

The UCC requires that a deficiency notice contain, among other items, an "explanation" for how the secured party calculated the surplus or deficiency. 11 M.R.S. §§ 9-1616(1)(a)(ii) & (2)(a). "A particular phrasing of the explanation is not required." § 9-1616(4). However, the explanation must contain six specified items of information, presented sequentially in a specified order. § 9-1616(3). The fourth item of information must disclose the amount and type of expenses incurred in retaking, holding, processing, and disposing of the collateral.

Davies alleges that the presentation of information in the Credit Union's Deficiency Notice does not conform to the ordering required by the UCC. An inspection of the Deficiency Notice appears to corroborate the allegation. The Deficiency Notice lists the aggregate unpaid balance first, as is required. *Id.* However, rather than next showing the amount of proceeds of the

disposition, as is required, *id.*, the Deficiency Notice appears to list some expenses. Davies alleges the disclosure of expenses is incomplete, because the next line item shown in the Deficiency Notice is for "Net Check from Proceeds of Sale." Use of the summary "net" suggests that some expenses were deducted from the amount of the proceeds, but the amount and type of the expenses are not shown, as is required. *Id.* Accordingly, Davies has sufficiently alleged that the Deficiency Notice is noncompliant.

The Credit Union counters that the Deficiency Notice is compliant, because the explanation requires no particular phrasing, and the explanation contained in the Deficiency Notice substantially complies with the UCC. § 9-1616(4). Moreover, the Credit Union argues that an explanation complying substantially with the UCC is sufficient even if it includes minor errors that are not seriously misleading. § 9-1616(4). Here, however, viewed in the light most favorable to Davies, the improper ordering of information contained in the explanation, combined with the use of the term "net," is sufficient to state an actionable claim for noncompliance. This is not a simple matter of alternative but acceptable phrasing, as is the case with the Repossession Notice. On this record, the Court cannot state conclusively that the Deficiency Notice substantially complies with the UCC or includes minor errors that are not seriously misleading.

Where noncompliance with 11 M.R.S. § 9-1616(2)(a) is part of a pattern, or consistent with a practice, of noncompliance, a debtor can recover a statutory damage award of $500. 11 M.R.S. § 9-1625(5)(e). Here, Davies alleges that the Credit Union sent the same Deficiency Notice to borrowers across Maine. Viewed in the light most favorable to Davies, this allegation is sufficient to constitute a pattern or practice of noncompliance. It follows, therefore, that Count II states a claim for statutory damages, and the Credit Union's Motion is denied as to Count II.

## CONCLUSION

For all these reasons, the Court grants the Credit Union's Motion to Dismiss as to Count I and denies the Motion as to Count II. Count I is dismissed with prejudice.

SO ORDERED.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Date: **12/29/2021**

_____

Michael A. Duddy, Judge
Business and Consumer Court

Entered on the docket: 12/29/2021

6

STATE OF MAINE                                            BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                                       DOCKET NO. BCD-CIV-2021-00026

| | |
|---|---|
| DOMAH D. DAVIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   **ORDER GRANTING DEFENDANT'S** |
| | )   **MOTION FOR PROTECTIVE ORDER** |
| BANGOR FEDERAL CREDIT | ) |
| UNION, | ) |
| | ) |
| Defendant. | ) |

In response to discovery requests propounded by Plaintiff Domah Davies ("Davies"), Defendant Bangor Federal Credit Union ("BFCU") has filed a Motion for Protection Order to shield the financial records of its consumer accountholders from unauthorized disclosure.[1] The Gramm-Leach-Bliley Act ("GLBA"), promulgated under 12 C.F.R. Part 1016, provides in Section 1016.15(a)(2)(v) that consumer financial records may be disclosed to parties acting in a "fiduciary or representative capacity." However, pursuant to Section 1016.17(a)-(b), the Act shall not be construed as superseding state laws that afford greater consumer protections than the Act. In Maine, 9-B M.R.S. § 162 provides greater consumer protections than the GLBA, and thus governs the analysis.

Davies argues class action attorneys and class representatives owe fiduciary duties to putative class members pre-certification, if for nothing else than the protection of said members' substantive rights. *See* Nick Landsman-Roos, Note, *Front-End Fiduciaries: Precertification Duties and Class Conflict*, 65 STAN. L. REV. 817, 820 (2013) ("These questions concerning the contours of an attorney's precertification fiduciary duty to class members when making strategic

---

[1] The Court rules on the Motion without oral argument, as provided by M.R. Civ. P. 7(b)(7). The oral argument scheduled for October 18, 2021 is thus unnecessary and will be removed from the Court's calendar.

1

decisions are not merely academic. They are recurring and yet often unaddressed in a variety of circumstances in class action litigation."); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("Class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."); *but cf.* Restatement (Third) of the Law Governing Lawyers § 99 cmt. l (Am. Law Inst. 2000) ("[A]ccording to the majority of decisions, once the proceeding has been certified as a class action, the members of the class are considered clients of the lawyer for the class; prior to certification, only those class members with whom the lawyer maintains a personal client-lawyer relationship are clients.").

However, the language of 9-B M.R.S. § 162 explicitly prohibits disclosure of *any* consumer financial information by a bank without either authorization from the consumer or the application of an enumerated exception. There is no exception for fiduciaries. *Id.* Maine law thus provides greater consumer protections than does the GLBA, which includes an exception for fiduciaries. Because the Maine statute makes no mention of fiduciaries or representatives, its intent would appear to be thwarted if an attorney could declare him or herself a fiduciary with implied authorization for the purposes of class certification and thereby skirt the clear language of the law. *See Lawson v. Key Bank of Southern Maine, Inc.*, 1985 Me. Super. LEXIS 358, *2 (denying request for information because of § 161 et seq.'s protections, noting that "[t]he customers, whose financial records with the bank are being sought, are not parties to the pending action. . . . To order the release of a bank customer's financial records in litigation to which the customer is not a party would defeat the very purpose for which the legislation was enacted"). The customers whose records are sought may become parties to this class action in the near future but at present are not parties.

2

Because the federal regulation states that it will not supersede state laws which offer greater protections, 12 C.F.R. § 1016.17, and Maine's protections are greater than under the federal law, 9-B M.R.S. § 162 is controlling and BFCU's consumers' financial records are protected from unauthorized disclosure, with or without notice.

The Court, upon review of the briefs and in light of the prohibition on the disclosure of such records without authorization of the accountholder under 9-B M.R.S. § 161 et seq., does hereby GRANT Defendant's Motion for Protective Order pursuant to M.R. Civ. P. 26(c) as follows

1. Defendant is not required to disclose account holder information to Plaintiff as requested, including but not limited to names, addresses, VIN #, loan and related financial records.

If the class is certified, or other circumstances in the litigation change, any party can bring the issue back for further review and orders.

SO ORDERED.

The Clerk is requested to enter this Order on the Docket, incorporating it by reference pursuant to M.R. Civ. P. 79(a).

Date: **10/05/2021**

_____
Michael A. Duddy, Judge
Business and Consumer Docket

Entered on the docket: 10/05/2021

3