STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. PORSC-CV-22-287

RYAN L. HAYNES,

Plaintiff,

v.

SARAH N. MOPPIN, ESQ.;
MATTHEW J. LAMOURIE, ESQ.;
DAVID B. VAN SLYKE, ESQ.;
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, CHARTERED, LLP;
ALM ORTHO, INC.; and
PAUL A. DEJULIIS

Defendants,

**COMBINED ORDER
ON PENDING MOTIONS**

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 0 8 2023 1:26 PM

RECEIVED

Before the Court are the following pending motions, which it addresses in this Combined Order:[1]

(1) Plaintiff's Motion for Attachment;
(2) Defendant Van Slyke's Motion to Dismiss
(3) Defendant LaMourie's Motion to Dismiss
(4) Plaintiff's Motion for Sanctions Against Attorney Aaron Burns
(5) Defendant ALM Ortho's Motions to Strike Plaintiff's Reply Memorandum
(6) Plaintiff's Motion for Sanctions Against Attorney Elizabeth Fontugne

The Court held a hearing on February 7, 2023 and heard argument on the Motion for

Attachment, the Motions to Dismiss, and the Motions for Sanctions. Plaintiff was self-represented.

Defendants Moppin, LaMourie, Van Slyke, and Preti Flaherty were represented by Attorney Gerald

---

[1] Also pending are the following motions, which the Court does not address at this time: Defendants DeJuliis and ALM Ortho's Motion to Quash Subpoena to Baker, Newman, & Noyes and Plaintiff's two Motions in Limine. In addition, the following requests remain pending: Defendants' Request for a Case Management Conference, by letter November 14, 2022; Plaintiff's agreement to that requested conference, by letter November 16, 2022; Plaintiff's Request for an in-person, recorded 26(g) discovery hearing, by letter December 9, 2022; Defendant DeJuliis's Request for a 26(g) hearing, by letter March 3, 2023; and Defendants Moppin, LaMourie, Van Slyke, and Preti's request for a 26(g) hearing, by letter February 2, 2023. Plaintiff also filed a letter with the clerk on February 7, 2023 alleging Attorney Burns violated the Maine Rules of Professional Conduct.

1

Petruccelli. Defendant ALM Ortho was represented by Attorney Aaron Burns, and Defendant DeJuliis was represented by Attorney David Johnson.

**Background**

Plaintiff alleges the following facts in his Complaint:

Plaintiff Ryan Haynes worked at Defendant ALM Ortho, Inc., a Maine-based company incorporated under Delaware law, as a Senior Vice President of Business Development. Pl.'s Compl. ¶¶ 1, 16. He was a director and officer of the company, as were Defendants Paul DeJuliis and Brian McLaughlin. ¶ 1. Haynes invested $30,000 in the company. ¶ 1. DeJuliis is the chief financial officer, secretary, treasurer, a director, and a shareholder of ALM Ortho. ¶ 17. He controls the financial books at ALM Ortho. *Id.*

Haynes, DeJuliis, and McLaughlin started ALM Ortho in summer 2020 as an orthopedic implant company that would operate in Maine. ¶ 19. To form the company, DeJuliis hired Defendant Attorney Sara Moppin of Preti Flaherty. ¶ 20. Defendant Attorney Matthew LaMourie, another attorney at Preti Flaherty, was also involved in the ALM Ortho matter. ¶¶ 2-7, 12-13. Defendant David Van Slyke is a managing attorney at Preti Flaherty. ¶ 14. DeJuliis was the ALM Ortho corporate officer delegated by Preti Flaherty to share communications between the law firm and Haynes. ¶ 37.

A Confirmation of Engagement Letter (also "Engagement Letter" or "Letter") described the terms of Preti Flaherty's representation of ALM Ortho and that Preti Flaherty was not representing the officers individually. ¶ 30. Moppin failed to provide Haynes with the Engagement Letter and never explained to him that she was representing the company rather than Haynes personally. ¶ 5. Instead, she provided the Letter to DeJuliis who did not share it

2

with Haynes. ¶ 27. Moppin drafted several business contracts under Delaware law, and she had Haynes sign the documents, although he did not understand them. ¶ 3. Haynes did not know that Moppin is not admitted to practice law in Delaware. ¶ 21. At the time he signed, Haynes believed Moppin was representing him individually – not only the company. ¶ 6. Until after his termination from ALM Ortho when he was given access to and read the Confirmation of Engagement Letter, Haynes believed Moppin and Preti Flaherty were representing the founders of ALM Ortho individually. ¶¶ 6, 20, 79-81.

Moppin was aware that DeJuliis had violated his fiduciary duty to shareholders by shifting money out of the company before valuing Haynes's 500,000 shares in ALM Ortho, representing a third of the company equity, at only $3,655. ¶¶ 4, 104-115, 146-148. DeJuliis manipulated the ALM Ortho balance sheet by adding a $60,000 expense titled "Loan from Shareholder" to weaken company equity. ¶¶ 116-119. DeJuliis also added a $82,667 product development cost and a $36,000 management fee without any supporting records. ¶¶ 120-123. According to a document from Moppin titled "ALM Ortho Management Fees to Fusion," DeJuliis paid himself $52,000 in management fees, directly to his company Fusion Management, without any company record, contract, or agreement. ¶ 124. According to bank statements, the amount paid to Fusion Management was actually $59,000. ¶ 125. DeJuliis also added an interest cost of $16,500 and a gross wages expense of $7,650.03, without any supporting agreement, contract, or records, to a profit and loss statement to increase debt. ¶¶ 127-129.

These alterations contributed to the low valuation of ALM Ortho, and the low payout Haynes was offered for his shares. ¶ 131. Moppin informed Haynes that the shareholders had committed to fund up to $350,000 in capital contributions, but these funds were not included in the valuation, which was performed by Shields & Co., Inc. ¶¶ 132-135. Meanwhile, DeJuliis

3

represented to investors that the company was valued at a minimum of $3,000,000. ¶ 144. Both Moppin and LaMourie were aware that the information given to Shields & Co. when it valued Haynes's shares was artificially low. ¶ 150. In reality, ALM Ortho's value was higher than the amount at which it was formally valued. ¶ 144. To date, Haynes has not been paid for his shares or received any other money from ALM Ortho. ¶ 151.

After Haynes had been terminated, DeJuliis hired Gerald Savage to take over Haynes's position for a salary estimated at $250,000. ¶ 3. Moppin was aware of the hiring arrangement with Savage but failed to respond to document requests from Haynes. ¶ 74. Moppin encouraged DeJuliis and ALM Ortho to refrain from paying Haynes so ALM Ortho could afford to pay Savage and Preti Flaherty's legal fees. ¶ 8. She also directed DeJuliis to refrain from having shareholder or director meetings while Haynes was employed by ALM Ortho. ¶ 39.

Moppin drafted the ALM Ortho Shareholders Agreement dated October 15, 2020, including complicated portions that Haynes did not understand and were not explained to him. ¶¶ 40-43. The agreement included a noncompete clause and that clause was not disclosed to Haynes before signing. ¶¶ 43-45. Moppin also included a forfeiture of rights provision that was harmful to Haynes's financial interests and which Haynes did not understand. ¶ 49. These provisions enabled DeJuliis to remove Haynes and justify not paying Haynes his salary. ¶ 50. The Shareholder Agreement also enabled an appraiser to opine on the value of the company and thereby affect stock value. ¶ 51. On October 7, 2021, Moppin sent Haynes a letter threatening him by referring to language in a non-disparagement clause and a confidentiality clause in the Shareholder Agreement he had signed. ¶ 48.

On July 21, 2021, DeJuliis gave Haynes a letter titled "Cessation of Service with ALM Ortho Inc.," which terminated his service as an employee without cause. ¶ 60. DeJuliis

4

terminated Haynes's employment so that the company could pay a low price for Haynes's shares, benefitting DeJuliis. ¶ 97. Moppin was aware that supporting DeJuliis in this act constituted representation of DeJuliis in his individual capacity. ¶¶ 98, 102. On July 26, 2021, Haynes requested records from Moppin. ¶ 62. LaMourie responded explaining that he had been retained by ALM Ortho, DeJuliis, and McLaughlin to respond to the record requests. ¶ 63. Moppin replied to Haynes's email requesting more information about the purpose of the requests and alleging that his request appeared to be adverse to the interests of the company. ¶ 65. Citing Delaware Code Title 8, Chapter 1, § 220, Haynes requested "contracts and other documents pertaining to transactions involving in excess of $1,000...." ¶ 68. Moppin failed to provide any contracts in response to that request and did not provide the Engagement Letter between ALM Ortho and Preti Flaherty. ¶¶ 70-71.

Concerned that Moppin was withholding information, Haynes emailed Moppin, LaMourie, and Van Slyke on September 15, 2021 stating that they had neglected to provide the ALM Ortho bank statements, the employment agreement with Savage, and contracts between ALM Ortho and Fusion Management. ¶ 73. On September 24, 2021, Moppin received a letter from Haynes requesting contracts relating to transactions over $1,000 including with DeJuliis, Savage, Preti Flaherty, and Shields & Co. ¶¶ 75-76. Moppin replied that the requests received were not proper under Delaware law, but she sent some documents, which included the Engagement Letter. Haynes had not seen the Engagement Letter before because it, and the fact that Preti Flaherty had not represented Haynes personally, had been concealed from him. ¶¶ 77-79.

Haynes's salary was set at $185,000 per year by oral agreement with DeJuliis and McLaughlin at the company office in Scarborough on September 29, 2020. ¶ 155. After

5

receiving the letter terminating his employment, Haynes emailed DeJuliis on July 21, 2021, advising that he had not been paid wages and requesting payment by that coming Friday. ¶ 159. The following day DeJuliis replied, stating that no wages were due because Haynes was a co-founder, not an employee. ¶ 160. On July 26, 2021, Moppin emailed Haynes instructing him to direct all future communications to her instead of DeJuliis or McLaughlin. After a request from Haynes for his personnel files and the reason for his termination, LaMourie stated that Haynes was terminated for his failure to satisfy expectations associated with pre-revenue sales and marketing activities, contradicting the previous no-cause termination letter. ¶ 163. Instead of paying Haynes his salary, ALM Ortho paid Gerald Savage, Haynes's replacement, a $250,000 salary. ¶¶ 167-168. Moppin hid ALM Ortho's payments to Savage from Haynes. ¶ 169. ALM Ortho also gave Savage 750,000 shares, which Haynes claims were his shares. ¶ 170. ALM Ortho does not have employment records regarding Haynes. ¶ 172.

In negotiations,[2] ALM Ortho, through counsel Moppin and LaMourie, conceded that Haynes had been an employee who had started working for ALM Ortho July 31, 2020. ¶¶ 172-173. They also conceded that at a minimum wage level, Haynes had earned $25,503.40 for his services. ¶ 175. When Haynes rejected that offer, they offered $50,000, $100,000, and $120,000. ¶¶ 176-178, 180. Some of these offers included categorizing some of Haynes's earnings as independent contract work rather than employee work, which Haynes claims is illegal under 26 M.R.S. § 591-A. ¶¶ 7, 56-57, 176, 181. According to Haynes, this offer constituted knowing and intentionally violation of the law by trying to force Haynes to help ALM Ortho avoid payment of

---

[2] Defendants argue the following facts from the Complaint contain inadmissible evidence under M.R. Evid. 408(a)(1) because they include statements "offering ... a valuable consideration in compromising or attempting to compromise the claim" and are offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." The rulings on the Motions below do not depend on these challenged facts.

6

taxes. ¶ 191. When the dispute between Haynes, DeJuliis, and ALM Ortho appeared, Moppin continued to represent DeJuliis and ALM Ortho rather than withdrawing. ¶ 8. Haynes asserts that a conflict of interest initially arose because Haynes's investment in ALM Ortho was used to pay Preti Flaherty's legal fees for their representation of ALM Ortho and DeJuliis. ¶ 87. On October 13, 2021, Haynes emailed Moppin asking if she had a conflict of interest, and she replied on October 21 that Preti Flaherty was no longer representing ALM Ortho. ¶¶ 84-85.

Defendants deny many of the above allegations, and in particular, they claim there was never an agreement to pay Haynes a salary.

Plaintiff brings the following twelve counts in his Complaint:

I. As to Defendants Moppin, LaMourie, and Preti Flaherty, a declaratory judgment stating that Defendants violated Maine Rules of Professional Conduct 1.7 and 1.13(e), and the 4 M.R.S. § 806 attorney's oath and stating that Moppin and LaMourie were representing Defendant DeJuliis individually, violating the Confirmation of Engagement letter;

II. As to Defendants Moppin, LaMourie, and Preti Flaherty, attorney malpractice based on Plaintiff's belief they were representing him and not only ALM Ortho as a business entity;

III. As to Defendants Moppin, LaMourie, and Preti Flaherty, fraudulent concealment, based on failure to disclose the terms of the Engagement Letter with ALM Ortho with the intention of affecting Plaintiff's actions;

IV. As to Defendants Moppin, LaMourie, Van Slyke, and Preti Flaherty, fraudulent inducement based on allowing Plaintiff to sign corporate agreements for ALM Ortho without warning him that he should obtain his own attorney;

V. As to Defendants Moppin, LaMourie, Van Slyke, and Preti Flaherty, aiding and abetting a breach of fiduciary duty based on their knowingly allowing DeJuliis to breach his fiduciary duties as a corporate officer and director at ALM Ortho by wrongfully devaluing the company and failing to pay Plaintiff a salary;

VI. As to Defendants Moppin, LaMourie, Van Slyke, and Preti Flaherty, negligent misrepresentation based on failing to exercise reasonable care or competence in obtaining or communicating information to Plaintiff in his transactions with Defendants;

VII. As to Defendants Moppin, LaMourie, Van Slyke, and Preti Flaherty, unjust enrichment based on retention of legal fees supplied by Plaintiff;

VIII. As to Defendants ALM Ortho and DeJuliis, failure to pay wages under 26 M.R.S. §§ 626, 626-A;

IX. As to Defendants ALM Ortho and DeJuliis, breach of contract based on failure to pay salary;

X. As to Defendants ALM Ortho and DeJuliis, quantum meruit based on work performed without payment;

XI. As to Defendants ALM Ortho and DeJuliis, failure to provide personnel file under 26 M.R.S. § 631 based on creation of documents and failure to provide them to Plaintiff; and

7

XII. As to Defendant DeJuliis, breach of fiduciary duty based on position as director and officer of ALM Ortho.

**Legal Standards and Discussion**

### A. *Plaintiff's Motion for Attachment and Motion to Strike by DeJuliis and ALM Ortho*

#### 1. Motion to Strike

First, the Court considers the Motion to Strike brought by DeJuliis and ALM Ortho. Defendants DeJuliis and ALM Ortho request this Court strike Plaintiff's Reply statement to Plaintiff's Motion for Attachment and attached exhibits. The Court grants the Motion to Strike.

Defendants move to strike on the grounds that the Reply introduces new matters, asserts unsworn facts, and discusses inadmissible settlement negotiations under M.R. Evid. 408(a). In opposition, Haynes repeats that he was an employee and Defendants' attorneys had admitted so. *See* Pl.'s Opp'n to Defs.' Mot. Strike 2. He also argues the Motion to Strike is an improper surreply and that motions to strike are only authorized in response to pleadings, citing M.R. Civ. P. 12(f).

Rule 4A governing attachments authorizes a party opposing an attachment to file "material in opposition as required by Rule 7(c)," M.R. Civ. P. 4A(c), but it contains no discussion of a reply. Because Rule 4A directly references a motion and opposition, but does not speak to a reply, it is unlikely that the Rule intends to allow a reply. At least one other Superior Court decision has come to this conclusion. *Phillips v. Labombard*, No. CV-14-154, 2014 Me. Super. LEXIS 194, at *4 n.1 (Nov. 7, 2014).

If a reply were allowed, the parties agree that under Rule 7(e), it would only be permitted to the extent it addresses issues initially raised in the opposition. The Court concludes that only some of the assertions in the Reply are responsive to the Opposition and that those statements already appeared in the Motion. Therefore, they are not "strictly confined to replying to new matter raised in the opposi[tion]." M.R. Evid. 7(e). Moreover, Haynes offers the statements,

8

which appear to be from settlement negotiations, to show that Defendants or Defendants' attorneys have admitted that Haynes was an employee. This offer appears improper under M.R. 408(a). For the above reasons, the Court finds that Plaintiff's Reply is improper and grants the Motion to Strike.

As to Plaintiff's argument that Defendants' Motion to Strike is actually an improper surreply, the Court disagrees. While Rule 12(f) allows motions to strike in response to pleadings, there is no indication that a motion to strike is limited to pleadings. Defendants' Motion to Strike is allowed under M.R. Civ. P. 7(b)(1), as "an application to the court for an order...stat[ing] with particularity the grounds therefor and the rule or statute invoked...." Here, the Defendants properly cite several grounds for their Motion to Strike, including M.R. Civ. P. 7(e), M.R. Evid. 408(a), and M.R. Civ. P. 4A(c), (i), and 4B(c), (i). Therefore, the Court concludes the Motion to Strike is proper.

2. Motion for Attachment

Next, the Court considers the Motion for Attachment, which it denies for the following reasons.

Maine Rules of Civil Procedure 4A and 4B govern attachment and trustee process. "[R]eal estate, goods and chattels and other property may ... be attached and held to satisfy the judgment for damages and costs which the plaintiff may recover." M.R. Civ. P. 4A(a). With some exceptions, trustee process may be used to secure satisfaction of a judgment for damages and costs. M.R. Civ. P. 4B(a). Trustee process may be served only if attachment on trustee process has been approved for a specified amount by order of the court. M.R. Civ. P. 4B(c).

"Because prejudgment attachment may operate harshly upon the party against whom it is sought, there must be strict compliance with the procedures prescribed by legislation and

9

implemented by court rules." *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993) (citations omitted). An order of attachment may only be issued "upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." M.R. Civ. P. 4A(c).

The court bases its determination on "the merits of the complaint and the weight and credibility of the supporting affidavits." *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826. Affiants must "set forth specific facts sufficient to warrant the required findings[,] and [affidavits] shall be upon the affiant's own knowledge, information or belief; and, so far as upon information and belief, shall state that the affiant believes this information to be true." M.R. Civ. P. 4A(i). In considering the motion, the court reviews and assigns weight to the affidavit evidence in the same manner as with other evidence. *Wilson*, 634 A.2d at 1254. Arguments of counsel or *pro se* litigants cannot substitute for the required sworn statements of relevant facts. *Id.*

Based on the contents of Plaintiff's Motion and affidavit, the success of the Motion depends on whether there was a valid agreement to pay Plaintiff a salary. Plaintiff's affidavit asserts that "[b]ased on a verbal agreement with the other two principals in the company, Defendant Paul A. DeJuliis and Brian R. McLaughlin, my salary was set at $185,000 per year." In response, Defendants provide two affidavits claiming not only that this agreement was never made, but also describing other conversations that indicated Haynes was not to be paid a salary. In one such conversation, Defendants claim to have offered Haynes a draw from potential future income rather than a salary.

10

Because Defendants' affidavits provide significantly more detail and several pieces of evidence refuting Plaintiff's claim, they carry more weight. The Court concludes that Haynes has not shown that he is more likely than not to succeed in any amount on his claim that he is owed a salary. To be clear, however, Plaintiff may continue to press this salary claim, along with other related arguments that he is entitled under the law to be fairly and justly compensated by the company. However, on the record before the Court, the Motion for Attachment is denied.

### B. *Defendants Van Slyke's and LaMourie's Motions to Dismiss*

Defendants Van Slyke and LaMourie both move to dismiss on the grounds that Haynes is entitled to no relief against them under any legal theory. M.R. Civ. P. 12(b)(6). On a motion to dismiss under M.R. Civ. P. 12(b)(6), the court views the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43. "[F]acts are not adjudicated, but rather there is an evaluation of the allegations in the complaint in relation to any cause of action that may reasonably be inferred from the complaint." *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830. The court should dismiss a claim only "when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts" that may be proven to support plaintiff's action. *Id.*

### 1. Van Slyke Motion

Haynes brings four counts against Van Slyke, the managing partner at Preti Flaherty. Haynes argues that Van Slyke failed to respond to an email from Haynes alleging that Attorney Moppin had not provided Haynes all the records he had requested and that Van Slyke should have informed him that Preti Flaherty was not representing Haynes personally. Haynes does not

11

otherwise allege that Van Slyke was involved with Haynes or ALM Ortho.

Van Slyke claims that Haynes has no viable claim against him for fraudulent inducement, negligent misrepresentation, aiding and abetting a breach of fiduciary duty, unjust enrichment, or under any other theory of law. Haynes responds that Van Slyke violated the 4 M.R.S. § 806 attorney oath. He also cites to Me. R. Prof. Conduct 5.1, "Responsibilities of Partners, Managers, and Supervisors," and argues that the Law Court has indicated that managing attorneys may be liable for the acts of their subordinates.

Van Slyke's only participation in the ALM Ortho matter alleged in the Complaint was referring the email he received from Haynes to Preti Flaherty's general counsel, Elizabeth Olivier. Van Slyke is charged with knowing of Moppin's alleged ethical violations, but even so, the record shows that Van Slyke engaged in remedial behavior by referring the matter to Olivier. Van Slyke received the email from Haynes on September 15, 2021, and Preti Flaherty ultimately withdrew from the representation on October 21, 2021. There is no allegation that the situation Haynes complained about was becoming worse with time or that Van Slyke should have checked in again with Olivier. Based on the allegations in the Complaint, the Court concludes Van Slyke's reaction to Haynes's email is not actionable.

The Court also concludes Van Slyke is not vicariously liable for behavior of other Preti Flaherty attorneys. While an employer may be liable for an employee's actions when the employee's conduct was within the scope of employment or the employee acted with authority, see *Picher v. Roman Catholic Bishop of Portland*, 2009 ME 67, ¶ 32, 974 A.2d 286, a supervisor is not vicariously liable for actions of his supervisees. Because it concludes Plaintiff had failed to allege facts showing Van Slyke could be liable to Plaintiff, the Court grants Van Slyke's Motion to Dismiss.

12

## 2. LaMourie Motion

The Complaint alleges that Attorney LaMourie, Of Counsel for Preti Flaherty, stated that Haynes would be properly classified as an employee of ALM Ortho for purposes of his unpaid wage claim. Other than that correspondence, LaMourie argues the rest of Haynes's allegations against him are based on inadmissible settlement communications. *See* Def. LaMourie's Mtn. Dismiss 3 (listing the allegations drawn from settlement communications). LaMourie also argues that Haynes cannot link his losses to LaMourie's actions and that LaMourie was not involved with ALM Ortho until after Haynes stopped working there.

Whether LaMourie was involved with ALM Ortho while Haynes worked there is disputed. Haynes' Counts I - VII involve allegations that LaMourie coordinated with Moppin, DeJuliis, and ALM Ortho to cheat Haynes out of his salary and his $30,000 investment in the company. Pl.'s Compl. ¶ 2. Haynes also claims that LaMourie was involved in appointing DeJuliis as the "gatekeeper" of legal information shared between Preti Flaherty and ALM Ortho, ¶ 37, and that LaMourie "dealt with [Haynes] through Defendant DeJuliis by directing Defendant DeJuliis to have [Haynes] sign corporate paperwork of Defendant ALM Ortho." ¶¶ 7, 35. Under Haynes's version of the facts, LaMourie was representing ALM Ortho and its shareholders along with Moppin and therefore is potentially liable for major allegations such as the failure to disclose that the organization was the client, the alleged withholding of the material information in the Engagement Letter, and the representation of DeJuliis and McLaughlin individually against the terms of the Engagement Letter. In addition, Haynes claims that LaMourie is involved in the retention of the money ALM Ortho still owes him. Accepting the facts alleged in the Complaint as true, the Court denies LaMourie's Motion to Dismiss.

13

*C. Plaintiff's Motions for Sanctions Against Attorneys Burns and Fontugne*

Plaintiff has moved for Rule 11 sanctions against Attorney Aaron Burns, who represents Defendant ALM Ortho, and against Attorney Elizabeth Fontugne, who represents Defendants Moppin, LaMourie, Van Slyke, and Preti Flaherty. For the following reasons, the Court denies both Motions.

1. Sanctions Against Atty. Burns

Haynes argues that Attorney Burns violated Rule 11 when he signed ALM Ortho's Answer, which denies Haynes's allegation at Paragraph 171 of the Complaint. Paragraph 171 of the Complaint reads,

> On July 30, 2021, Defendant LaMourie, Esq. responded to my personnel file request from Defendant ALM Ortho, stating the following: "ALM Ortho, Inc. concedes that Mr. Haynes satisfies the definition of employee. Notwithstanding that fact, however, there are no personnel records that pertain to Mr. Haynes which would correspond to the statutory definition set forth in 26 M.R.S.A. § 631." In other words, Defendant LaMourie, Esq. concedes that Defendant ALM Ortho was in violation of Maine law by not keeping statutorily required employment records.

Haynes takes issue with Defendants' denial of this fact, claiming that it should have been admitted to prevent delay. ALM Ortho claims it denied the assertion because the assertion relied on inadmissible evidence, the substance of a settlement communication. M.R. Evid. 408(a).

M.R. Civ. P. 11(a) reads:

> The signature of an attorney or party constitutes a representation by the signer that the signer has read the pleading or motion; that to the best of the signer's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay…. If a pleading or motion is signed with intent to defeat the purpose of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, upon a represented party, or upon both, an appropriate sanction.

The Court concludes that Rule 11 sanctions are not warranted here, where ALM Ortho denied the allegation because of evidentiary rules and strategy, and not for an improper purpose. The

14

Court denies this Motion for Sanctions against Attorney Burns.

## 2. Sanctions against Atty. Fontugne

Haynes argues that Attorney Fontugne should be sanctioned because Moppin's Answer to Plaintiff's Complaint failed to admit that Haynes had not received the Confirmation of Engagement Letter given to ALM Ortho by Preti Flaherty. The relevant assertions in the Complaint are the following:

> Defendant Moppin, Esq. drafted a "Confirmation of Engagement" letter dated August 14, 2020, which she gave to Defendant DeJuliis, regarding legal services for Defendant ALM Ortho. In the engagement letter Defendant Moppin, Esq. stated a material fact that she was only representing Defendant ALM Ortho; [and] At the time, Defendant Moppin, Esq. failed to disclose the engagement letter to me, which contained material information that I needed to know such as the terms of her engagement and whom she was representing.

Pl.'s Compl. ¶¶ 27-28. Defendant Moppin's Answer reads,

> Denied that Mr. Haynes was unaware that Preti Flaherty represented only ALM Ortho, as he reviewed, discussed, and approved the offer of representation later set forth in the Conformation of Engagement Letter with his colleagues on August 13, 2020, the day before ALM Ortho engaged Preti Flaherty as legal counsel; and further saying that it was plainly understood by all concerned, within the Preti Flaherty law firm as well as within ALM Ortho, that Mr. DeJuliis was the representative of ALM Ortho designated to handle all communications with ALM Ortho's counsel.

Answer to Pl.'s Compl. ¶ 28.

> With regard to denying assertions in a Complaint,

> Denials shall fairly meet the substance of the averments denied. When a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder. Unless the pleader intends in good faith to controvert all the averments of the preceding pleading, the pleader may make denials as specific denials of designated averments or paragraphs, or the pleader may generally deny all the averments except such designated averments or paragraphs as the pleader expressly admits; but, when the pleader does so intend to controvert all its averments, the pleader may do so by general denial subject to the obligations set forth in Rule 11.

15

M.R. Civ. P. 8(b).

Haynes argues that Moppin did not show him the Letter and should not be able to claim that he knew its contents. In her Opposition, Fontugne illustrates how the denial is based on Moppin's disagreement with Plaintiff's assertion that he had not seen the letter and was missing material information. This denial is proper under Rule 8. Therefore, the Court denies the Motion for Sanctions against Attorney Fontugne.

**Conclusion**

In sum, the Court grants the Motion to Strike, denies the Motion for Attachment, grants Van Slyke's Motion to Dismiss, denies LaMourie's Motion to Dismiss, and denies both Motions for Sanctions.

The entry is:

Plaintiff's Motion for Attachment is DENIED. Defendants ALM Ortho and DeJuliis's Motion to Strike is GRANTED. Defendant Van Slyke's Motion to Dismiss is GRANTED. Defendant LaMourie's Motion to Dismiss is DENIED. Plaintiff's Motion for Sanctions against Attorney Burns and Motion for Sanctions against Elizabeth Fontugne are both DENIED.

Because no Scheduling Order has been issued, and there remain pending a number of discovery disputes, the Court shall schedule a Zoom conference with Mr. Haynes and Counsel of Record as soon as possible.

16

The Clerk is directed to enter this Order on the docket by incorporating it by reference. M.R. Civ. P. 79(a).

3 | 8 | 23

**DATE**

**SUPERIOR COURT JUSTICE**
M. Michaela Murphy

Entered on the Docket: 03/08/2023

17